The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Thomas T. VALDEZ, Defendant–Appellant.

No. 06CA0103.

Colorado Court of Appeals, Div. IV.

Dec. 27, 2007.

Rehearing Denied Feb. 8, 2008.

John W. Suthers, Attorney General, Matthew D. Grove, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Gregory R. Stross, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge BERNARD.

Defendant, Thomas T. Valdez, appeals the order denying his Crim. P. 35 request for postconviction relief from his convictions and sentence. We vacate the order and remand for further proceedings.

## I. Introduction

This case presents the following issues surrounding the application of the doctrine of laches to postconviction proceedings.

- Can the doctrine of laches bar Crim. P. 35(c) claims that were timely filed, but have not been timely pursued? We describe why we believe the doctrine applies.
- If the doctrine of laches applies, was it satisfied in this case? The facts in this case indicate the doctrine was satisfied.

Can the bar of laches be avoided? We conclude that, if a defendant demonstrates justifiable excuse or excusable neglect for failing to pursue a timely filed claim, then he or she can avoid the application of the doctrine.

Does ineffective assistance of postconviction counsel constitute justifiable excuse or excusable neglect? We determine that it does.

How should prejudice be analyzed for purposes of the standard enunciated in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), when the allegation of ineffective assistance involves the limited statutory right to counsel in postconviction proceedings described in *Silva v. People,* 156 P.3d 1164, 1168–70 (Colo.2007)? We conclude that prejudice in these circumstances must be defined in terms of the nature of postconviction proceedings.

Was defendant's postconviction counsel ineffective in this case? We conclude postconviction counsel was ineffective under the *Strickland* standard by not timely prosecuting defendant's postconviction motion.

Even though we have concluded postconviction counsel was ineffective, is defendant nevertheless not entitled to relief because (1) he abandoned his postconviction claims by acquiescing in his counsel's inaction, or (2) he waived his right to the effective assistance of postconviction counsel? We conclude that a remand is necessary to answer these questions.

## II. Background

After a jury trial in 1992, defendant was convicted of three counts of sexual assault on a child (pattern of conduct), and three counts of sexual assault on a child (position of trust). All six counts were class 3 felonies. § 18–3–405, C.R.S.2007. Later that year, defendant was sentenced to three consecutive ten-year sentences, one for each of the sexual assault on a child (pattern of conduct) counts, and three concurrent ten-year sentences for the three counts of sexual assault on a child (position of trust). The judgment was affirmed in *People v. Valdez,* 874 P.2d 415 (Colo.App.1993). The mandate was issued on June 16, 1994, after the supreme court denied defendant's petition for a writ of certiorari. Defendant was represented by the same defense counsel at trial and on appeal.

On March 10, 1997, the court received a letter from defendant claiming, without raising specific instances, that his counsel had been ineffective at trial and on appeal. Defendant asked the trial court to appoint counsel to assist him in petitioning the court because he felt he had "a meritorious basis for appropriate postconviction relief." He wrote, "I am not comfortable or feel qualified to present any case law concerning this letter[,] [n]or would even attempt to file this letter as a motion. I am in dire need of effective counsel to perfect an appropriate type of postconviction relief application."

On March 18, 1997, the court sent the public defender an order requiring the public defender to look into the case and inform the court whether the public defender would represent defendant "with regard to the attached 35(c) motion filed on March 10, 1997." A copy of this order was forwarded to the district attorney and to defendant.

A public defender replied on March 20, 1997, indicating the public defender's office would accept the appointment to investigate defendant's claims. The court then appointed the public defender's office to represent defendant for purposes of "defendant's 35(c) motion" on March 24, 1997. The court sent the district attorney and defendant a copy of this order.

In December 2000, the court held a hearing, at which defendant was present, concerning the public defender's subpoena to produce some school records. At that time, the public defender explained the records were subpoenaed for "an old 35(c) case that apparently kind of fell between the cracks." He said, "I had the case a long time ago. I handed it off, and I now have it back." A member of the district attorney's office attended the hearing.

In April 2004, the public defender filed a document entitled, "Supplemental Motion to Reverse Conviction for Ineffective Assistance

of Counsel Pursuant to Crim. P. 35(c) and Request for Hearing," which contained specific allegations. After several requests for extension of time were granted by the court, the prosecution filed its response in May 2005, in which it asserted the doctrine of laches as a defense, asking that the trial court deny defendant's postconviction motion without a hearing on the merits.

The trial court, a judge who had not previously dealt with this case, set defendant's motion for a hearing, alerting the parties that the trial court wished to address whether (1) the doctrine of laches would apply to the public defender's inaction; (2) the concept of excusable neglect would justify a "delay in filing of seven years"; and (3) the test for ineffective assistance of counsel enunciated by *Strickland* would apply to "counsel whose actions fall outside of excusable neglect."

In a brief addressing these issues, the public defender argued defendant filed his request for postconviction relief within the three-year period required by section 16–5–402, C.R.S.2007. When discussing whether the doctrine of laches was applicable, the public defender wrote:

[Defendant] is blameless. He filed his pro se motion on time. He did everything he could, in a timely fashion, to enforce his rights. He relied on the Court's action of appointing counsel and believed the matter was being handled. From that point forward he was helpless to do anything else. He is "the party." He is not guilty of any delay. Any delay in moving forward should be attributed to his counsel or the Court. There is no delay here on the part of the "party."

The public defender also wrote:

In the case at bar counsel for the defense is not in a position to argue that he has been ineffective. In the event that this Court finds that [defendant] is not entitled to have a determination of the merits of his claim because of delay caused by his court appointed counsel, then the Court will have to first appoint independent counsel to represent [defendant] to see if [defendant] is entitled to proceed on a 35(c) claim because his court appointed counsel was inef-

fective in its handling of his 35(c). Then it will have to review the merits of the case to determine if trial counsel was ineffective. This will result in more delays and seems to be a waste of time and resources.

The public defender observed:

It is admitted that through a series of miscommunications at the public defender's office that the case laid [sic] dormant for a long period of time before anything was done. [The public defender] believed the case had been reassigned and in fact it had not. [The public defender] personally accepts responsibility for this and assures this court that it was not intentional, it was not done to gain any advantage and there was never any acquiescence by [defendant] to any delay in this case. When the Court takes action and appoints counsel to represent an individual that individual should be able to rely on that counsel. He should not lose the right to have an issue of constitutional magnitude resolved because he relied on the actions of the Court and his court appointed lawyer.

In a written order issued in November 2005, the court denied defendant's motion for postconviction relief without a hearing. The court noted defendant had timely filed his first Crim. P. 35(c) motion with his 1997 letter. However, the trial court determined the application of the equitable doctrine of laches made defendant's motion untimely under section 16–5–402. Relying on *People v. Merchant*, 983 P.2d 108, 112–13 (Colo.App. 1999), a case the trial court viewed as factually similar, the trial court concluded the doctrine of laches should be applied because the seven-year delay between the receipt of defendant's letter and the public defender's filing the supplemental motion would frustrate the beneficial purposes of section 16–5–402. These purposes include avoiding the problems associated with litigating stale claims. *See People v. Wiedemer*, 852 P.2d 424, 429 (Colo.1993).

The court decided the doctrine of laches applied because defendant failed to act on the case for seven years. This failure constituted "unconscionable delay," and allowed

"the memories of [the prosecution's] witnesses to diminish."

Finally, the trial court stated that defendant could avoid the doctrine of laches if the court were to decide that defendant's failure to pursue his motion for seven years was a product of justifiable excuse or excusable neglect. The trial court determined defendant's argument that the delay was excusable was based upon an allegation of ineffectiveness of postconviction counsel, specifically that the public defender did not "follow through and supplement" the 1997 letter. Concluding that "the mere failure to challenge a conviction does not establish ineffective assistance of counsel nor constitute excusable neglect or justifiable excuse," the trial court rejected this argument "as a matter of law."

### III. The Doctrine of Laches

There are mechanisms in place at many points along the timeline of criminal cases to protect the constitutional rights of defendants, to keep cases moving, and to avoid the problems associated with stale claims. For example, the filing of criminal charges is governed by statutes of limitations. *See* § 16–5–401, C.R.S.2007. Pretrial proceedings in criminal cases are subject to constitutional and statutory principles that prevent cases from becoming stale. *See People v. Chavez,* 779 P.2d 375, 376 (Colo.1989) (constitutional speedy trial); § 18–1–405, C.R.S. 2007 (statutory speedy trial).

■ Section 16–5–402 regulates the filing of postconviction claims to prevent the filing of stale claims. *Robbins v. People,* 107 P.3d 384, 388–90 (Colo.2005). Allegations of error previously resolved on appeal or in prior postconviction proceedings cannot be raised again, unless specific exceptions apply. Crim. P. 35(c)(3)(VI); *People v. Tolbert,* —— P.3d ——, ——, 2007 WL 1288451 (Colo.App. No. 05CA1836, May 3, 2007) (successive postconviction motions seeking same or similar relief); *People v. Davis,* 759 P.2d 742, 746 (Colo.App.1988) (issues resolved on direct appeal). Subject to enumerated exceptions, claims that could have previously been brought on direct appeal or in postconviction proceedings must be denied. Crim. P.

35(c)(3)(VII). Postconviction review is limited to constitutional issues. *People v. Sherman,* 172 P.3d 911, 916 (Colo.App.2006).

However, there is no concomitant device in any rule, statute, or the constitution to keep postconviction claims from becoming stale after they have been timely filed. One potential device for accomplishing that task is the equitable doctrine of laches.

### A. Does the Doctrine Apply?

Relying on *Robbins,* the trial court determined that the doctrine of laches barred defendant's claim. In *Robbins,* the supreme court held that the enactment of section 16–5–402 was not designed to abrogate the doctrine of laches, and concluded that the doctrine could operate to bar a postconviction claim where section 16–5–402 "otherwise would not." 107 P.3d at 390.

However, the claim in *Robbins* arose from a class one felony conviction, for which section 16–5–402 imposes no time limitation. In contrast, defendant's 1997 letter was timely filed under the applicable three-year limitation of section 16–5–402. Thus, the question here is not whether the doctrine of laches would bar defendant's claim because defendant did not file a timely motion under section 16–5–402, but, instead, whether laches applies because defendant did not timely pursue a claim he filed within statutory limits.

We have found no Colorado rule or appellate decision that addresses whether the doctrine of laches applies in criminal cases to bar the consideration of timely filed postconviction claims that are not timely prosecuted. However, Colorado civil cases have addressed the effect of a failure to prosecute claims that were timely filed. These cases indicate either the doctrine of laches may apply, or the doctrine may have been supplanted by C.R.C.P. 41(b) (involuntary dismissal for failure to prosecute claim or bring it to trial with due diligence). *Compare Yampa Valley Coal Co. v. Velotta,* 83 Colo. 235, 238, 263 P. 717, 718 (1928) ("It is true the action in the instant case was brought within the time fixed by the statute. But the mere institution of an action does not, of itself, relieve the person from the charge of

laches, or inexcusable delay, and, if he fails in the diligent prosecution of the action, the consequences are the same as though no action had begun."), *and Bower v. Pound,* 68 Colo. 457, 460, 190 P. 425, 426 (1920)("Laches may consist in a failure to prosecute with diligence the suit ... although the suit may have been seasonably begun."), *with Columbine Valley Mut. Imp. & Maint. Ass'n v. Bd. of County Comm'rs,* 173 Colo. 321, 323, 478 P.2d 312, 313 (1970) ("A review of the record and a reading of the commentary by the court leads inescapably to the conclusion that the dismissal was for lack of prosecution which the court termed 'laches.' This was merely a misnomer. Dismissal for failure to prosecute was proper.").

■ We conclude the supreme court's analysis in *Robbins* indicates that the doctrine of laches should be applied in these circumstances, because the supreme court stated:

> Our legislature and courts have evinced a strong desire to curb stale postconviction claims in order to ensure finality of convictions in our criminal justice system, give force to repeat offender statutes, and alleviate the difficulties of litigating stale claims. The preservation of laches as a time bar against stale claims comports with that intent. We now hold there is no express implication that the equitable doctrine of laches was abrogated by the enactment of section 16–5–402. Crim. P. 35(c) is a postconviction remedy grounded in equitable principles, and under certain circumstances, laches may work to bar the defendant's claim for relief where section 16–5–402 would not.

*Robbins v. People,* 107 P.3d at 390.

### B. Was the Doctrine Satisfied?

■ The constituent elements of a claim of laches are: "(1) full knowledge of the facts; (2) unreasonable delay in the assertion of an available remedy; and (3) intervening reliance by and prejudice to another." *Cullen v. Phillips,* 30 P.3d 828, 833 (Colo.App. 2001). The possible prejudice includes factors like the death of witnesses, the loss of evidence, *id.,* or the dimming of witnesses' memories. *Robbins,* 107 P.3d at 388.

■ Whether the elements of laches have been established is a question of fact. *Superior Constr. Co. v. Bentley,* 104 P.3d 331, 334 (Colo.App.2004). We review the trial court's findings for an abuse of discretion. *Cone v. Jackson,* 12 Colo.App. 461, 463–64, 55 P. 940, 942 (1899); *see also E–470 Public Highway Auth. v. 455 Co.,* 3 P.3d 18, 23 (Colo.2000) (appellate court reviews evidentiary factual findings for an abuse of discretion).

■ Here, the trial court determined the elements of the doctrine of laches had been satisfied. After analyzing the record, we conclude the trial court did not abuse its discretion in reaching that result.

Defendant and the public defender were aware of the conditions that prompted the prosecution's claim that the doctrine of laches should apply. Defendant knew he could avail himself of postconviction relief in 1997, when he filed a document claiming his previous attorney had been ineffective and asking for counsel to assist him in pursuing postconviction relief. The public defender was aware of the letter. Defendant and the public defender knew nothing further was done to bring that motion to any sort of resolution for seven years.

A seven-year delay in asserting defendant's remedy by bringing the postconviction motion before the court for resolution showed an unreasonable lack of diligence. We agree with the trial court's assessment that the length of the delay was "unconscionable."

The prosecution alleged it was prejudiced because, by the time the postconviction motion was heard by the court, fifteen years had elapsed since defendant's trial. The prosecution contended it would be seriously disadvantaged, should the trial court award defendant a new trial, because the memories of the victims, whose whereabouts were presently unknown and who were young children in 1992, would likely have dimmed.

The trial court's assessment that this assertion constituted a sufficient claim of prejudice was within its discretion. *See Johnson v. United States,* 49 M.J. 569, 574 (N.M.Ct. Crim.App.1998) (prejudice presumed for pur-

poses of doctrine of laches when memories of court martial proceedings would "undoubtedly have faded" over twenty-nine years); *Robbins*, 107 P.3d at 388; *McCray v. State*, 699 So.2d 1366, 1368 (Fla.1997)(delay of fifteen years barred ineffective assistance of counsel postconviction claim by operation of doctrine of laches when it is obvious, "from the face of [defendant's] petition" that prosecution has been prejudiced because passage of time results in loss of evidence, faded memories, and death or unavailability of witnesses); *Woods v. State*, 506 N.E.2d 487, 488 (Ind.Ct.App.1987)(doctrine of laches barred claim because twenty-five-year gap between trial and a defendant's request for postconviction relief created a "strong presumption" of prejudice, as "[d]uring such a period, records are lost, memories dim, and the appearance of the defendant will likely change considerably"); *Woodberry v. State*, 33 Kan. App.2d 171, 176, 101 P.3d 727, 731 (2004)(doctrine of laches "should apply" when defendant waited twenty-five years to file request for postconviction relief because "[m]emories of the witnesses and victims, if still available, surely would be compromised by the delay.").

### C.  Can the Bar of Laches Be Avoided?

Section 16–5–402(2)(d), C.R.S.2007, provides an exception to the operation of the statutory time bar if the trial court finds the failure to seek relief was due to justifiable excuse or excusable neglect. In *People v. Wiedemer*, 852 P.2d at 441–42, the supreme court established a nonexclusive list of the factors that could constitute justifiable excuse or excusable neglect, which included "the extent to which a defendant having reason to question the constitutionality of a conviction investigates its validity and takes advantage of avenues of relief that are available to him," "the extent of time between the date of conviction and the defendant's challenge," and "the effect that the passage of ... time has [had] on the State's ability to defend against the challenge."

■ In *People v. Clouse*, 74 P.3d 336, 341 (Colo.App.2002), a division of this court determined that "timeliness of ineffective postconviction counsel claims must ordinarily be assessed under the rubric of justifiable excuse or excusable neglect." Resolving whether there is justifiable excuse or excusable neglect is normally a question of fact. *Id.*

■ Thus, employing the concept of justifiable excuse and excusable neglect as an exception to the operation of the doctrine of laches in this context is logical. This is particularly true because the supreme court held that section 16–5–402 would be unconstitutional without the exception for justifiable excuse and excusable neglect. *People v. Wiedemer*, 852 P.2d at 435, 440–41 ("[T]he applicability of the justifiable excuse or excusable neglect exception must be evaluated by balancing the interests under the facts of a particular case so as to give effect to the overriding concern ... that a defendant have the meaningful opportunity required by due process to challenge his conviction."). By engrafting the exception of justifiable excuse and excusable neglect onto the doctrine of laches in the postconviction review process, we avoid an application of the doctrine of laches that might be unconstitutional under the due process clause. *See id.*

We conclude that the trial court correctly determined the doctrine of laches could be applied to determine whether defendant's timely filed postconviction claim should be dismissed because of the public defender's delay in bringing the supplemental motion before the court and requesting a hearing on it. We further conclude the trial court was correct to consider whether the public defender's conduct constituted justifiable excuse or excusable neglect that would serve as an exception to the doctrine of laches and allow defendant's claim to be considered on the merits.

Therefore, we must next determine whether (1) the trial court here properly determined the public defender was not ineffective in creating the delay, and, thus, (2) defendant failed to show there was justifiable excuse or excusable neglect to avoid the application of the doctrine of laches.

■ Whether a defendant has established justifiable excuse or excusable neglect to avoid the application of the time bar in sec-

tion 16–5–402 is a question of fact, *id.* at 442, and if there is support for the trial court's findings in the record, we will not disturb those findings on appeal. *People v. Shepherd,* 43 P.3d 693, 699 (Colo.App.2001). We conclude this standard of review is appropriate here.

## IV. Ineffective Assistance of Counsel

### A. Can Ineffective Assistance of Counsel Constitute Justifiable Excuse or Excusable Neglect in Postconviction Proceedings?

#### 1. General Principles

A claim of ineffective assistance of counsel is a mixed question of law and fact. *Strickland,* 466 U.S. at 698, 104 S.Ct. 2052; *People v. Garcia,* 815 P.2d 937, 943 (Colo. 1991). When reviewing a postconviction court's findings on mixed questions of law and fact, we defer to factual findings as long as they are supported by the record, but we review legal conclusions de novo. *Dunlap v. People,* 173 P.3d 1054, 1063 (Colo.2007).

To prevail on a claim of ineffective assistance, a defendant bears the burden of demonstrating that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. However, a judgment will not be set aside unless a defendant was prejudiced by an error of counsel. A defendant must prove both of the elements of ineffective assistance of counsel by a preponderance of the evidence. *People v. Dunlap,* 124 P.3d 780, 795 (Colo.App.2004).

Prejudice is normally proved by showing there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different. In these circumstances, proof of actual prejudice is necessary because there is a strong presumption that the trial or other proceedings were reliable. *Smith v. Robbins,* 528 U.S. 259, 286, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *Strickland,* 466 U.S. at 696, 104 S.Ct. 2052.

However, in some situations, courts presume the existence of prejudice, rather than requiring defendants to prove the existence of actual prejudice. For example, in *Roe v. Flores–Ortega,* 528 U.S. 470, 484, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000), the Supreme Court held that, when a defendant shows that "counsel's deficient performance ... actually cause[d] the forfeiture of the defendant's appeal," a defendant need only show "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed" in order to establish prejudice.

Prejudice is presumed under these circumstances, without a showing of the merits of the defendant's claims, because "the violation of the right to counsel rendered [the appeal] presumptively unreliable or entirely nonexistent." *Id.* When counsel's deficient performance results in the "serious denial of the entire judicial proceeding itself, which a defendant wanted at the time and to which he had a right," there is a presumption of prejudice because the presumption of reliability is not accorded to "judicial proceedings that never took place." *Id.* at 483, 120 S.Ct. 1029.

Ineffective assistance of counsel can constitute justifiable excuse or excusable neglect. *See People v. Chang,* 179 P.3d 240, 244, 2007 WL 2493900 (Colo.App. No. 06CA 1194, Sept. 6, 2007) (a finding of ineffective assistance of postconviction counsel would "satisfy defendant's obligation to establish justifiable excuse or excusable neglect to avoid the time bar contained in § 16–5–402").

#### 2. Defendant's Right to Effective Postconviction Counsel

Under section 21–1–104(2), C.R.S.2007, defendant here had a limited statutory right to the effective assistance of postconviction counsel. This statutory right exists only if the court and the public defender's office are satisfied that there is arguable merit in an indigent defendant's claim under Crim. P. 35(c). If this limited right is found to exist, postconviction counsel's performance is evaluated under the two-pronged test for effectiveness described in *Strickland. Silva,* 156 P.3d at 1168–70.

The court that originally received defendant's 1997 letter dealt with it as a motion

filed pursuant to Crim. P. 35(c), and appointed the public defender to represent defendant for the purposes of that motion. By doing so, the court apparently concluded that defendant's claims had some merit. *Duran v. Price,* 868 P.2d 375, 379 (Colo.1994) (a district court is not obligated to appoint counsel for indigent defendant's in Crim. P. 35(c) proceedings "when the asserted claim is wholly unfounded").

The public defender obviously concluded the motion had arguable merit, because the public defender filed a supplemental motion in 2004, which detailed allegations of ineffective assistance of original counsel at trial and on appeal. Thus, we conclude the record demonstrates defendant's limited statutory right to counsel was triggered.

■ Therefore, the record in this case is clear that the trial court and the public defender's office found defendant's claims had sufficient merit to invoke his statutory right to counsel for postconviction proceedings. *See* §§ 21–1–103(1), 21–1–104, C.R.S.2007. Thus, defendant has the right to raise the issue whether that counsel was ineffective. Further, because we have concluded that the doctrine of laches applies in these circumstances, and that an exception must be made for justifiable excuse or excusable neglect, we further conclude that ineffective assistance of postconviction counsel can constitute such an exception.

**B. How Should Prejudice Be Defined for Analyzing Allegations of Ineffective Assistance of Postconviction Counsel?**

Crim. P. 35(c) proceedings exist (1) to provide defendants with an opportunity to argue that constitutional errors associated with their trials, guilty pleas, or sentences should result in convictions or sentences being set aside; and (2) to bring finality to judgments. Crim. P. 35(c)(2), (3); *Edwards v. People,* 129 P.3d 977, 982 (Colo.2006).

■ In light of these purposes, allegations of ineffectiveness of postconviction counsel do not directly bring the validity of the original conviction into question. Rather, the issue is whether postconviction counsel's conduct "may have failed to elicit the original

invalidity" of the original conviction or sentence. *See Jackson v. Weber,* 637 N.W.2d 19, 24 (S.D.2001)(Konenkamp, J., concurring specially).

Defendant argues the trial court's refusal to consider his postconviction motion, because of the application of the doctrine of laches, denied him an opportunity to have his claim resolved on the merits. Like failure to perfect an appeal, this is the kind of claim that raises the possibility of a presumption of prejudice, rather than requiring defendant to prove actual prejudice. *See Flores–Ortega,* 528 U.S. at 483–86, 120 S.Ct. 1029; *People v. Baker,* 104 P.3d 893, 896 (Colo.2005); *People in Interest of A.J.,* 143 P.3d 1143, 1147 (Colo. App.2006); *People v. Long,* 126 P.3d 284, 286–87 (Colo.App.2005)(applying *Flores–Ortega* ).

■ If, under these circumstances, the public defender is determined to have been ineffective, the appropriate remedy would be to remand this case to the trial court for a hearing on the merits of defendant's Crim. P. 35(c) motion as supplemented, not to order that defendant be granted a new trial. *See Long,* 126 P.3d at 287 ("Because [the defendant] alleged that he was deprived of the right to appeal, his sole remedy is reinstatement of this right.").

**C. Was Postconviction Counsel Ineffective in This Case?**

■ Contrary to the trial court's characterization, the issue is not whether the public defender failed to challenge defendant's conviction, but whether the public defender was ineffective in representing defendant in pursuing a challenge that was filed within the time limits prescribed by section 16–5–402.

The record in this case contains significant information describing the nature of the delay, the reasons for it, and its consequences. The record establishes the public defender did little for seven years until the supplemental motion was filed. The public defender took full personal responsibility for the delay, and there is no indication in the record that the public defender thought the delay was justified, justifiable, or a matter of conscious strategic or tactical choice. *Cf. People v.*

*Stewart*, 55 P.3d 107, 119–20 (Colo.2002)(analyzing difference between attorney incompetence and strategic choice for purposes of invited error doctrine).

The public defender stated that his inaction was not defendant's fault. Defendant requested counsel in 1997 because he was "not comfortable or ... qualified to present any case law," and he was in "dire need of effective counsel to perfect an appropriate type of postconviction relief application." The evidence before the trial court about the public defender's conduct was the public defender's admission that defendant's case slipped through the cracks in the public defender's system.

■ The record establishes that the public defender's performance was deficient because he did not file the supplemental motion for seven years after being appointed. The public defender had a duty to file a supplemental motion that did not add new claims to those contained in defendant's original motion, or to obtain a hearing on defendant's original motion, in a timely manner. *See People v. Baker*, 104 P.3d at 896; *People in Interest of A.J.*, 143 P.3d at 1149 ("In criminal cases, an attorney's failure to file a notice of appeal after his client has instructed him to do so constitutes ineffective assistance of counsel."); *People v. Ambos*, 51 P.3d 1070, 1071–72 (Colo.App.2002) (timely commencement of postconviction proceedings does not toll the statute of limitations for additional claims). As a matter of law, we conclude that this seven-year omission was, "in light of all the circumstances ... outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052.

■ Under *Flores–Ortega, Baker*, and *Long*, we must presume defendant was prejudiced. The public defender's conduct resulted in the trial court's denying defendant a hearing on the merits of his postconviction claim, and, therefore, the judicial proceeding he sought, and to which he would have been entitled absent the operation of the doctrine of laches, "never took place." *See Flores–Ortega*, 528 U.S. at 483, 120 S.Ct. 1029.

Thus, the trial court's decision that defendant did not show justifiable excuse or excusable neglect because the public defender's failure to supplement the original Crim. P. 35(c) motion for seven years was not ineffective assistance of counsel as a matter of law, but merely a "failure to challenge the conviction," is not supported by the record. Instead, our review indicates the record only supports a conclusion that defendant was denied the effective assistance of counsel in his postconviction proceedings. *See Hammond v. State*, 93 S.W.3d 823, 826–27 (Mo.Ct.App.2002)(trial court's determination that counsel had not abandoned defendant by failing to file a timely amendment to motion for postconviction review was clearly erroneous).

We recognize this case presents deeply troubling questions about the allocation of the prejudicial effects of postconviction delay. We are sympathetic to the trial court's concern about the seven-year gap between the receipt of defendant's letter and the filing of the supplemental motion, and we are sensitive to the prosecution's claim that this long delay will adversely affect the ability of the prosecution to retry defendant should he be granted a new trial.

Society's interest in the finality of criminal convictions is important. *Stroup v. People*, 656 P.2d 680, 684 (Colo.1982). This interest has "enhanced significance" in postconviction proceedings. *Edwards*, 129 P.3d at 982. Postconviction review can intrude upon the state's significant interest in concluding litigation, and can deny society its right to punish some admittedly guilty lawbreakers. *See Duckworth v. Eagan*, 492 U.S. 195, 210, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989)(O'Connor, J., concurring) (discussing consequences of federal habeas corpus review on state court criminal convictions).

■ Nevertheless, although the state has a legitimate interest in the finality of convictions, that interest is "not a justification for permitting unconstitutional convictions to stand." *People v. Germany*, 674 P.2d 345, 350 (Colo.1983). Even though granting a new trial years after the first can present insuperable problems of proof, such problems "though real and substantial, can-

not be permitted to be used to erode constitutional rights of accused persons." *See People v. Roybal*, 618 P.2d 1121, 1127 n. 7 (Colo. 1980).

Here, however, defendant's claim is that his limited statutory right to the effective assistance of counsel was violated. Thus, the right we interpret and apply is not constitutional. *See Silva v. People*, 156 P.3d at 1167–1168.

■ Violations of statutory rights do not necessarily require the same remedies as violations of constitutional rights. *See United States v. Caceres*, 440 U.S. 741, 754–55, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979)(violation of agency regulations does not provide a basis for the application of the exclusionary rule in the absence of a constitutional violation); *People v. McKinstry*, 843 P.2d 18, 20 (Colo. 1993)("where an officer has obtained evidence in violation of a statute or regulation, the exclusionary rule is not triggered unless the unauthorized conduct also amounts to a constitutional violation"). In an analogous context, because counsel's error here is not constitutional, it would not provide defendant with a cognizable claim for relief in federal habeas corpus proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752–54, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)("In the absence of a constitutional violation, the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation....").

■ However, by concluding that the two-pronged analysis of *Strickland* applies to evaluating claims of ineffective assistance of postconviction counsel, *Silva* indicates that the vindication of the statutory right anticipates and accepts the risk of old cases being retried, even if hobbled by the passage of time. The result of the application of *Strickland* is clear: if a lawyer's deficient representation prejudices a defendant, the defendant is entitled to relief, usually in the form of new proceedings. In this context, the logic is equally direct: when defense counsel's ineffective assistance deprives a defendant of a hearing on the merits of his or her postconviction claim, then the remedy is to provide such a hearing. *Strickland* admits of no exception to this logic for claims that

may result in retrials after the passage of many years, and we cannot create one. Thus, vindication of this statutory right trumps society's interest in the finality of convictions.

### D. Did Defendant Abandon His Crim. P. 35(c) Claim or Waive His Right to Effective Counsel?

■ Finally, although we are able to discern with particularity from this record that the public defender was ineffective in representing defendant in the postconviction proceedings, we are unable to determine with particularity whether defendant acceded to the delay. Thus, a remand for further proceedings is necessary. *See Cummings v. People*, 785 P.2d 920, 925 (Colo.1990).

Proof of acquiescence in the delay could show defendant abandoned his claims. *See People v. Fuqua*, 764 P.2d 56, 61 (Colo.1988)(defendant deemed to abandon filed Crim. P. 35(b) motion if he or she does not "make reasonable efforts to secure an expeditious ruling"); *People v. Abeyta*, 923 P.2d 318, 321 (Colo.App.1996) (although the defendant stated it was not his intent to abandon claims, record showed he withdrew them from court's consideration, even though he indicated their consideration was "reserved for a later date"); *Pace v. State*, 854 So.2d 167, 180 (Fla.2003) (defendant's inaction for one and one-half years between his request for public records and evidentiary hearing on his motion for postconviction relief abandoned any claim that he was denied the public records); *cf. Steagald v. United States*, 451 U.S. 204, 209, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981) (government may lose the right to raise factual issues when it fails to raise issues in a timely manner during litigation).

Facts establishing such acquiescence could also provide a basis for denying defendant relief because defendant may have waived his right to the effective assistance of counsel. *See Menzies v. Galetka*, 150 P.3d 480, 516–17 (Utah 2006) ("To the extent that a litigant has acted negligently or intentionally, a court may consider these acts in striking an equitable balance between finality and allowing the

litigant a fair hearing, notwithstanding the gross negligence or ineffective assistance of counsel.").

■ A defendant can waive his or her right to the effective assistance of counsel. *See Dunlap v. People,* 173 P.3d at 1070 (a defendant who validly waives the right to conflict-free counsel may not later bring a claim of ineffective assistance based upon counsel's conflict of interest); *People v. Boehmer,* 767 P.2d 787, 789 (Colo.App.1988) (waiver of right to effective assistance of counsel must be "established with certainty and not by speculative inference or implication"); *Little v. State,* 819 N.E.2d 496, 503 (Ind.Ct.App.2004) (defendant waived claim counsel was ineffective because he was aware counsel was not licensed to practice law in Indiana, and defendant's decision to proceed to trial with an unlicensed attorney was invited error).

■ When assessing claims of waiver of the constitutional right to counsel, courts examine the waiver to determine whether it was knowing, voluntary, and intelligent. *People v. Duran,* 757 P.2d 1096, 1097 (Colo. App.1988). However, the analysis of the waiver of the limited statutory right to counsel is based on deciding whether the waiver was simply voluntary. *Id.; see Wiedemer,* 852 P.2d at 438 (because right to postconviction review is statutory, not constitutional, waiver of the right need only be voluntary, not knowing and intelligent). Determining whether a waiver was voluntary is a question of fact for the trial court. *Duran,* 757 P.2d at 1097.

Defendant certainly knew about the delay. He filed the original motion. He understood counsel had been appointed for him. He was aware his motion had not been resolved for seven years.

However, the record does not include facts such as whether the public defender (1) communicated with defendant about the postconviction motion; (2) made any representations to defendant about the motion's progress; (3) provided any explanations for the delay; (4) inquired whether defendant wished to continue litigating the postconviction motion; or (5) informed defendant what the public defender intended to do or not do about the delay.

The record also does not include facts such as whether defendant (1) asked the public defender about the progress of his postconviction motion; (2) informed the public defender he agreed with, acquiesced in, or accepted the delay; (3) took any action to obtain a resolution of his postconviction motion, including making efforts, successful or unsuccessful, to bring the delay in the motion's resolution to the trial court's attention; (4) considered the delay beneficial or detrimental to his postconviction motion; (5) cared whether his postconviction motion was resolved expeditiously; (6) acted as a reasonable person would act in inquiring about, following up on, and requesting the resolution of his claim; or (7) intended to abandon his Crim. P. 35(c) motion.

In determining whether a remand for further proceedings is necessary, we are mindful of the prosecution's argument on appeal that a remand is unnecessary because defendant's claims can be resolved against him based on our review of the existing record. However, our analysis of the record in light of defendant's claims leads us to disagree with this contention.

Therefore, a remand to the trial court is necessary to determine whether, as a question of fact, defendant agreed to or acquiesced in the delay and, by doing so, (1) abandoned his right to relief under Crim. P. 35(c), as asserted in his 1997 letter to the court, or (2) voluntarily waived his right to effective assistance of postconviction counsel, as that right is described in *Silva. See Duran,* 757 P.2d at 1097; *see also United States v. Horodner,* 993 F.2d 191, 195 (9th Cir.1993)(remand necessary to determine whether defendant consented to the abandonment of an appeal from his convictions). This inquiry should be based upon facts such as those listed above, and any other relevant facts developed in the course of the proceedings.

## V. Conclusion

Because the public defender's ineffective assistance constituted justifiable excuse or excusable neglect to avoid the application of

the doctrine of laches, we reverse the trial court's order denying defendant's motion for postconviction relief as untimely. We remand the case to the trial court to conduct a hearing to determine whether defendant abandoned his Crim. P. 35(c) claims or voluntarily waived his right to the effective assistance of postconviction counsel. If the trial court finds that defendant abandoned his claims or waived his right to effective assistance, the trial court shall deny defendant's Crim. P. 35(c) motion because defendant will not have established justifiable excuse or excusable neglect to avoid the application of the doctrine of laches.

If the trial court finds that defendant did not abandon his claims or waive his right to effective assistance, then the trial court shall hold a hearing on the merits of defendant's Crim. P. 35(c) claims, as those claims are described in defendant's 1997 letter, in the public defender's 2004 supplemental motion, and in any supplemental pleadings concerning only those claims that may be filed by new postconviction counsel. *See Ambos,* 51 P.3d at 1071–72. Because we have concluded that the public defender was ineffective in his representation of defendant in the postconviction proceedings, the trial court shall appoint alternate defense counsel to represent defendant for the purposes of all proceedings on remand.

The order is vacated, and the case is remanded for further proceedings consistent with this opinion.

Judge VOGT and Judge WEBB concur.