23CA2067 Peo v Harris 09-18-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2067
Teller County District Court No. 22M245
Honorable Scott Sells, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Samuel David Harris,

Defendant-Appellant.

---

ORDER AFFIRMED

Division I
Opinion by JUSTICE MARTINEZ*
Moultrie, J., concurs
J. Jones, J., dissents

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 18, 2025

---

Philip J. Weiser, Attorney General, Brian M. Lanni, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Erin Wigglesworth, Alternate Defense Counsel, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     Defendant, Samuel David Harris, appeals the postconviction court's order denying his Crim. P. 35(c) motion for postconviction relief following an evidentiary hearing.  We affirm.

## I.     Background

¶ 2     As part of a plea agreement Harris pleaded guilty to violation of a protection order.  In exchange for his plea, the prosecution agreed to dismiss the remaining charged counts as well as the counts in two separately filed criminal cases.  Harris agreed to pay restitution for all dismissed counts and cases and "stipulate[d] to causation for restitution purposes."  The parties agreed that the sentence would be open to the court.

¶ 3     The district court sentenced Harris to 364 days in jail.  The court ordered the prosecution to submit its request for restitution within thirty days following the sentencing hearing and granted trial counsel fourteen days to object.

¶ 4     Subsequently, the prosecution submitted a proposed restitution "payout order" for the imposition of $11,026.01 in restitution.  When Harris did not file an objection within the court-ordered timeframe, the district court granted the prosecution's request and entered an order for $11,026.01 in restitution.

¶ 5    Approximately two weeks after the district court entered its order, trial counsel filed a motion objecting to the restitution order and requesting that the court set a hearing to determine the amount of restitution to be paid.  The motion explained that trial counsel had been on family leave when the prosecution filed its proposed order for restitution and had just been made aware of the request.  The court denied the motion, finding that "[t]he objection was not timely filed."

¶ 6    Thereafter, with the assistance of counsel, Harris filed a motion for postconviction relief pursuant to Crim. P. 35(c).  In it, Harris alleged that trial counsel provided ineffective assistance by failing to file a timely objection to the prosecution's proposed order and that counsel's failure to file a timely objection resulted in the loss of his due process right to challenge restitution at a hearing. And Harris argued that he should not be required to demonstrate prejudice because counsel's ineffective assistance resulted in the forfeiture of his objection to the restitution order and a hearing.

¶ 7    The postconviction court ordered the prosecution to respond to Harris's motion.  The prosecution did so and asserted that Harris was required to show prejudice because the failure to timely object

to a restitution request was not a failure that deprived Harris of an entire judicial proceeding. The prosecution also argued that prejudice in this context would be that, but for counsel's failure to file a timely objection, the court would have both (1) set the matter for a hearing and (2) denied the prosecution's request following that hearing.

¶ 8 The postconviction court held an evidentiary hearing on Harris's motion. Before the start of the hearing, the prosecution conceded that trial counsel's failure to timely object to the restitution amount constituted deficient performance but continued to object on prejudice grounds.

¶ 9 Harris's trial counsel testified at the hearing. The prosecution did not call any witnesses but submitted a victim impact statement showing the costs purportedly incurred as a result of Harris's conduct.

¶ 10 After the hearing, the postconviction court denied Harris's motion. The court disagreed with Harris that prejudice was presumed. Instead, the court concluded that to establish prejudice Harris needed to show that the court would have "set a hearing" and "would have denied the restitution payout order at the

hearing." The court also found that if a timely objection had been filed, it "would have set it for a hearing" but it would not have denied the prosecution's request following a hearing because there was "no showing that [the] damages [were] unreasonable or over-inflated or excessive" and the amount requested by the prosecution was "reasonable based upon the evidence." Because Harris failed to establish prejudice, the postconviction court denied Harris's motion.

## II.     Appellate Jurisdiction

¶ 11     Initially, we consider whether we have jurisdiction to hear this appeal. The order being appealed was signed by Judge Sells, a district court judge, in a case that originated in the county court, in Teller County. The court of appeals issued an order to show cause on the jurisdictional issue, and Harris filed a response. Based on the response, the motions division of this court discharged the order to show cause and ordered the appeal to proceed. Because one judge on this merits division does not agree that we have jurisdiction, rather than merely rest on the decision of the motions division, we explain the basis of our jurisdiction over this appeal.

¶ 12    Jurisdiction is a question of law, which we review de novo. *People v. Maser*, 2012 CO 41, ¶ 10.

¶ 13    Appellate jurisdiction over county court decisions rests with the district court for the judicial district in which the relevant county court sits.  *See* § 13-6-310(1), C.R.S. 2025; § 16-2-114(1), C.R.S. 2025; Crim. P. 37(a); *Maser*, ¶ 12.  Thus, if the denial of a postconviction motion was entered in county court, we lack jurisdiction to address Harris's claims.  If it is an appeal from the district court, we may hear the appeal.  *See* § 13-4-102(1), C.R.S. 2025; C.A.R. 1(a)(1); *Maser*, ¶ 12.

¶ 14    Relevant to our determination is a broad local policy encouraging the transfer of county court criminal cases to the district court to allow multiple cases concerning the same defendant to be resolved together when the defendant has a case or cases pending in the district court.  The policy is in a standing order issued by the Chief Judge of the Fourth Judicial District (which includes El Paso County and Teller County).  This order, Fourth Judicial District Chief Judge Order 2008-02, Transfer of County Court Criminal Cases to District Court (amended Apr. 21, 2008) (CJO), *requires* that all non-domestic violence misdemeanor

cases, where the defendant has an open and pending felony case in district court, be transferred to the district court if the defendant has not entered a guilty plea in the county court case. Additionally, this order directs the district court not to consider a county court case as transferred to the district court until the county court division has entered a minute order noting the transfer. And this order directs the district court's clerk to ensure that the actions in the district court are entered in the county court case. The CJO is an appropriate exercise of authority by a chief judge. *See* Colo. Const. art. VI, § 5(4) ("Each chief judge shall have and exercise such administrative powers over all judges of all courts within his district as may be delegated to him by the chief justice.").

¶ 15    At the time this case was filed, Harris had two open, pending felony cases in the district court. Therefore, this case, originating in the county court with only misdemeanor non-domestic violence charges, met the criteria for a mandatory transfer to the district court pursuant to the CJO. The operative question, then, is whether this county court case was transferred to the district court as required. We conclude that it was.

¶ 16    Significantly, the written petition to enter a plea of guilty carries a caption indicating the matter was transferred to the district court.  So does the prosecution's proposed restitution "payout order" requesting the imposition of $11,026.01 in restitution.  *See People v. Vargas-Reyes*, 2018 COA 181, ¶ 19 (considering the pertinent filings by the parties to determine appellate court jurisdiction).  Also, our review of the Colorado Judicial Branch's case management system, known as JPOD, lists the misdemeanor case in "Division 11 - Teller District Court."  *See People v. Linares-Guzman*, 195 P.3d 1130, 1135-37 (Colo. App. 2008) (concluding that it is appropriate to take judicial notice of the court records in the judicial branch's case management system).

¶ 17    We acknowledge that there is no minute order transferring this case to the district court, as required by the CJO.  However, based on the other minute orders in this case, which appear to have been entered by the district court clerk in the county court case as required by the CJO, every proceeding, apart from the first appearance, was held in Division 11 of the district court.  And, apart from the initial appearance, Judge Sells presided over each of the proceedings and signed the order being appealed.  Moreover,

there is no order that we could find assigning Judge Sells to the county court. *See* Chief Justice Directive 95-01, Authority and Responsibility of Chief Judges, § A(III)(B) (amended Jan. 2025) ("The chief judge may assign district court judges to any district or county court within the district when necessary.").

¶ 18 The apparent administrative failure of the county court to issue an order documenting the mandatory transfer of the case is not determinative of whether we have jurisdiction to resolve Harris's appeal. *Cf. Maser*, ¶¶ 6, 9 (holding that the court of appeals had jurisdiction to hear the prosecution's appeal absent a minute order from the county court in El Paso County transferring the case to the district court as required by the CJO). Nor does the entry of orders in the county court case determine jurisdiction; those entries were required by the CJO for cases transferred to the district court. Finally, we note that the motions division of this court separately determined that we have jurisdiction to address Harris's appeal. While divisions of this court are not bound by the decisions of other divisions, including a motions division, *see Chavez v. Chavez*, 2020 COA 70, ¶ 13, based on the foregoing, we see no reason to depart from the motions division's prior determination.

¶ 19    In sum, the charges against Harris were duly filed in the county court.  The case was then transferred, as required by the CJO, to the district court.  A district court judge, sitting as such, accepted Harris's plea and entered an order requiring him to pay restitution.  Because the judgment of conviction was entered in the district court, Harris's postconviction challenge must also remain in the district court.  *See Vargas-Reyes*, ¶ 23.

¶ 20    Accordingly, because the denial of Harris's postconviction motion was entered in district court, appellate jurisdiction lies with us, and we will address his appeal on the merits.

### III.    Ineffective Assistance of Counsel Claim

¶ 21    Harris contends that the postconviction court erred by denying his Crim. P. 35(c) motion because the denial of a restitution hearing due to the deficient performance of counsel itself satisfies the prejudice prong of an ineffective assistance of counsel claim.  We disagree.

### A.    Legal Principles and Standard of Review

¶ 22    We review the denial of a Crim. P. 35(c) motion after a hearing as a mixed question of fact and law.  *People v. Corson*, 2016 CO 33, ¶ 25.  We defer to the postconviction court's factual findings but

review de novo the court's ultimate conclusions regarding performance and prejudice. *See Carmichael v. People*, 206 P.3d 800, 807-08 (Colo. 2009), *overruled on other grounds as recognized by, People v. Delgado*, 2019 COA 55; *People v. Sharp*, 2019 COA 133, ¶ 12. The postconviction court determines the weight and credibility to be given to the testimony of witnesses in a Crim. P. 35(c) hearing. *People v. Hardin*, 2016 COA 175, ¶ 39. Accordingly, "[w]here the evidence in the record supports the findings and holding of the postconviction court that presided over an evidentiary hearing, the judgment will not be disturbed on review." *People v. Wardell*, 2020 COA 47, ¶ 27.

¶ 23    To succeed on an ineffective assistance of counsel claim, the defendant must establish that (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Dunlap v. People*, 173 P.3d 1054, 1062-63 (Colo. 2007). A postconviction court may reject an ineffective assistance of counsel claim if the defendant fails to demonstrate either deficient

performance or prejudice. *See People v. Aguilar*, 2012 COA 181, ¶ 9.

¶ 24    Prejudice is normally proved by showing that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *People v. Valdez*, 178 P.3d 1269, 1278 (Colo. 2007). In this circumstance, proof of actual prejudice is necessary because there is a strong presumption that the proceedings were reliable. *Id.*

¶ 25    But in very limited circumstances prejudice is presumed. In *United States v. Cronic*, 466 U.S. 648, 659-60 (1984), the Supreme Court identified three of these circumstances: (1) when the defendant is denied counsel at a critical stage of the proceeding; (2) when counsel "entirely fails to subject the prosecution's case to meaningful adversarial testing"; and (3) when circumstances are such that "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." In addition, courts have found that prejudice is presumed when counsel fails to perfect an appeal, *see*

*Roe v. Flores-Ortega*, 528 U.S. 470, 484 (2000); *People v. Long*, 126 P.3d 284, 286-87 (Colo. App. 2005), or fails to timely pursue a motion under Crim. P. 35(c), *see Valdez*, 178 P.3d at 1278-80.

B.    Analysis

¶ 26    Harris contends that trial counsel provided ineffective assistance of counsel by failing to timely object to the prosecution's proposed restitution order.  He argues that, because he has "the right to a restitution hearing when requested" and restitution is "a critical stage," we must presume *Strickland* prejudice from counsel's forfeiture of this right.

¶ 27    Harris cites no authority directly indicating that we presume *Strickland* prejudice when counsel fails to timely object to the prosecution's request for restitution.  Instead, he relies on *People v. Martinez-Chavez*, 2020 COA 39, ¶ 18, in which a division of this court recognized that a defendant has a right to a restitution hearing when one is requested.  But the division in *Martinez-Chavez* required a *timely* objection to the restitution request and did not address whether prejudice is presumed when counsel fails to assert a defendant's right to a restitution hearing by timely filing an objection to the prosecution's request for restitution.  *See id.* at ¶ 2

("We hold that when restitution is not addressed at a defendant's sentencing hearing and is instead reserved at the request of the prosecution, if the defendant *timely objects* to the restitution and demands a hearing, then the defendant is entitled to an in-person hearing on the issue of restitution." (emphasis added)).

¶ 28    We do not disagree with the notion that, in Colorado, a defendant has a statutory right to a restitution hearing when one is timely requested, *see id.*, and we acknowledge that sentencing, which includes the imposition of restitution, is a critical stage of the trial proceeding. *See People v. Hernandez*, 2019 COA 111, ¶ 24 (concluding that sentencing, including the imposition of restitution, is a critical stage). However, when the district court proceeds under section 18-1.3-603(1)(b), C.R.S. 2025, as it did here, the court enters an order assigning restitution liability, which is a component of the sentence, but the determination of the amount of restitution is severed from the sentence and the judgment of conviction. *See Tennyson v. People*, 2025 CO 31, ¶ 50 ("Under subsection (1)(b), the amount of restitution is severed from the sentence . . . ."); *Sanoff v. People*, 187 P.3d 576, 578 (Colo. 2008) (noting that an order assigning liability for restitution is a necessary component of a

14

defendant's sentence, and the judgment of conviction, while an order establishing the amount of restitution is not a required component of the defendant's sentence).

¶ 29     Harris does not challenge the district court's order that he is liable for restitution.  Rather, he challenges the court's order concerning the restitution amount.  Because the court's order concerning the amount of restitution is not a component of his sentence and the judgment of conviction, *see Sanoff*, 187 P.3d at 578, we do not agree with Harris that trial counsel's forfeiture of the hearing to set that amount falls within *Cronic*'s presumption of prejudice where there is a complete denial of counsel at a critical stage of the proceeding.  *See Cronic*, 466 U.S. at 659 (when a defendant is denied counsel at a critical stage of the proceeding, prejudice should be presumed).

¶ 30     Moreover, a presumption of prejudice applies only when counsel's conduct results in the forfeiture of an "*entire* judicial proceeding."  *Flores-Ortega*, 528 U.S. at 483 (emphasis added); *see Sharp*, ¶¶ 28-31.  A "proceeding" in this context means "the *whole* of a discrete phase of a criminal prosecution."  *Sharp*, ¶ 30 (emphasis added).  Colorado courts recognize three discrete

15

proceedings: "(1) a trial proceeding, from the commencement of the case to the resolution of all allowed post-judgment, pre-appeal motions in the trial court; (2) an appellate proceeding, including at least a defendant's appeal as a matter of right to this court; and (3) a postconviction proceeding under Rule 35(c)." *Id.* (footnote omitted). When counsel fails to file an individual motion or take other action *within* a proceeding — for example, moving for a new trial or a judgment of acquittal — such conduct does not qualify for a presumption of prejudice because the defendant has not been deprived of an entire proceeding. *See id.* at ¶¶ 31-34.

¶ 31 We conclude that a hearing on the amount of restitution is not a critical stage of the proceeding and does not constitute an "entire judicial proceeding" for purposes of presuming prejudice. *Flores-Ortega*, 528 U.S. at 483. Rather, a hearing on the amount of restitution is but one subpart of the trial proceeding — namely, the resolution of a postjudgment motion in the district court. *See Sharp*, ¶ 30. Because trial counsel's failure to file a motion objecting to the amount of restitution did not cause Harris to forfeit an entire judicial proceeding to which he was entitled, Harris was

16

required to show actual prejudice from his counsel's performance. *See id.* at ¶¶ 30-31.

¶ 32　We are not persuaded otherwise by Harris's argument that prejudice must be presumed because he had "no opportunity" to review and prepare a challenge to the victim impact statement submitted by the prosecution and relied on by the postconviction court when it found that Harris had failed to show actual prejudice. Even if Harris had no opportunity to review and prepare a challenge to the victim impact statement, we note that while postconviction counsel objected to the admission of the exhibit, when the court admitted it over her objection, she did not request a continuance or make any suggestion that she needed additional time to prepare a challenge to it. *See People v. Anderson*, 837 P.2d 293, 299 (Colo. App. 1992) (a failure to request a continuance or ask for more time in the district court belies an assertion of surprise on appeal).

¶ 33　Instead, postconviction counsel chose to argue only that prejudice was presumed because prejudice in this circumstance was either "the loss of any right to a restitution hearing" or "that there's actually a reason for a restitution hearing" because trial counsel "would have objected in this specific case." Postconviction

counsel chose not to argue or present any evidence that, but for trial counsel's deficient performance, the district court would have held a hearing, and Harris would have been successful at that hearing. *See People v. Ortiz*, 2016 COA 58, ¶ 30 ("[T]he court did not deny defendant the opportunity to rebut the prosecution's evidence; defendant simply chose not to try to do so.").

¶ 34 Having concluded that Harris was required to show actual prejudice from trial counsel's deficient performance, and because Harris makes no argument regarding actual prejudice, we perceive no error in the postconviction court's decision to deny his claim that his trial counsel provided ineffective assistance of counsel by failing to file a timely objection to the amount of restitution requested by the prosecution.

## IV. Disposition

¶ 35 The order is affirmed.

JUDGE MOULTRIE concurs.

JUDGE J. JONES dissents.

JUDGE J. JONES, dissenting.

¶ 36　When this court lacks jurisdiction over an appeal, we must refrain from addressing its merits and must dismiss it.  *See Goodall v. Gentry-Cunningham*, 2024 CO 52, ¶¶ 2, 11-12; *Giuliani v. Jefferson Cnty. Bd. of Cnty. Comm'rs*, 2012 COA 190, ¶ 15; *People in Interest of J.C.S.*, 169 P.3d 240, 248 (Colo. App. 2007).  In my view, we lack jurisdiction over this appeal.  Therefore, I respectfully dissent.

¶ 37　The court of appeals lacks jurisdiction over appeals from county court; such appeals must be pursued in district court.  § 13-6-310(1), C.R.S. 2025; Crim. P. 37(a); *see also* Colo. Const. art. VI, § 17.  This case began and has remained in county court, and the order appealed from — the order denying defendant's petition for postconviction relief — was issued in county court.

¶ 38　The People initiated this case in July 2022 by seeking an arrest warrant on two misdemeanor allegations of violating a protection order.  The case was assigned the following case number: "2022M000245."  It was more fully designated in the court's register of actions as case number "**C**0602022M000245."  (Emphasis added.)  Presumably the "M" stands for "misdemeanor."  Three

previously filed and related felony cases against defendant were filed in district court and bore the case number designation "D" rather than "C" and the case type indicator "CR" rather than "M." The People ultimately charged defendant with three misdemeanors in this case.

¶ 39 Defendant reached a global plea disposition covering this case, another misdemeanor county court case (captioned with a "C" designation and "M" case type), and the three district court cases previously mentioned. As part of that plea agreement, defendant agreed to plead guilty to one misdemeanor in this case — one of the charges asserted in an "Amended Complaint" filed along with the plea agreement and bearing the caption "County Court." The court's order accepting that plea agreement in this case was captioned as being issued in "County Court" and bore the county court case number. Defendant agreed to pay restitution as part of the plea agreement. The court's order approving the amount of restitution sought by the People was captioned as being issued in "County Court" and bore the county court case number.

¶ 40 Defendant filed a petition for postconviction relief under Crim. P. 35(c) challenging the amount of restitution. That petition was

captioned as being filed in "County Court." The People filed an opposition to that motion also captioned as filed in "County Court" and bearing the full case number "C0602022M000245." Following a hearing on the motion, the court entered a minute order denying it. That order was captioned as being issued by the "County Court" and bore the full case number "C0602022M000245." Defendant appeals that order.

¶ 41    A motions division of this court ordered defendant to show cause why his appeal should not be dismissed because it was from an order issued in a county court case. Defendant's response argued only that the order had been issued by a district court judge. The motions division discharged the order to show cause and allowed the appeal to proceed.

¶ 42    In my view, the motions division got it wrong. *See Chavez v. Chavez*, 2020 COA 70, ¶¶ 13, 25, 40 (a merits division of the court of appeals isn't bound by the ruling of a motions division; dismissing appeal for lack of jurisdiction). As noted, the case was filed in county court, the case was designated as a county court case, the case at all times bore a county court case number, and all

21

orders entered in the case were expressly from "County Court" bearing a county court case number.

¶ 43    As I see it, the fact that a district court judge entered the order appealed from (and certain other orders entered in the case) makes no difference.[1]  District court judges "may serve in any state court with full authority as provided by law."  Colo. Const. art. VI, § 18; *see also* Colo. Const. art. VI, § 1 (vesting judicial power in "county courts"); §§ 13-6-101, -102, C.R.S. 2025 (establishing county courts as "court[s] of record"); *Blackman v. Cnty. Ct.*, 455 P.2d 885, 887 (Colo. 1969) (when acting pursuant to article VI, a county court is a "state court").  I'm not aware of any authority holding that when a district court judge acts in a county court case, that, by itself, transforms the case into a district court case.

¶ 44    I am aware that Fourth Judicial District Chief Judge Order 2008-02, Transfer of County Court Criminal Cases to District Court (amended Apr. 21, 2008), which I presume remains in effect, allows for county court cases to be transferred to district court in limited circumstances.  It is questionable, at best, whether any of those

---

[1] Other orders were entered by a county court judge.

22

circumstances exist in this case. But more importantly, that order expressly says, "The District Court shall NOT consider a County Court case transferred to District Court until the County Court division has entered a minute order transferring such case to District Court." *Id.* (emphasis in original). No such order appears in the Teller County Combined Court's register of actions for this case.[2]

¶ 45 The appellant has the burden of showing appellate jurisdiction. *Jok v. City of Burlington*, 96 F.4th 291, 293 (2d Cir. 2024); *United States v. Solco I, LLC*, 962 F.3d 1244, 1249 (10th Cir. 2020); *In re Marriage of Salviola*, 2020 IL App (1st) 182185, 165 N.E.3d 514, 521; *Moran v. Bonneville Square Assocs.*, 25 P.3d 898, 899 (Nev. 2001) (an appellate court may not presume it has jurisdiction). Defendant has failed to meet that burden. Because we don't have any authority to expand our jurisdiction, *Chavez*, ¶ 22, I would dismiss this appeal with prejudice.

---

[2] Fourth Judicial District Chief Judge Order 2008-02, Transfer of County Court Criminal Cases to District Court (amended Apr. 21, 2008), also provides that "[n]either the district attorney, defense counsel, nor pro se' [sic] defendant may transfer the case."