2020 IL App (1st) 182185

No. 1-18-2185

Opinion filed June 30, 2020

Fourth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF ROCCO SALVIOLA III, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 17 D 8494 |
| | ) | |
| JENNIFER SUE SALVIOLA, | ) | Honorable |
| | ) | Edward A. Arce, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    This interlocutory appeal arises from a divorce proceeding, where the wife, Jennifer Sue

Salviola, filed an emergency motion for injunctive relief, alleging that the husband, Rocco Salviola

III, secretly amended his revocable trust to remove her as the successor trustee and beneficiary a

few months before he filed his divorce petition. Jennifer alleged that this trust had been part of the

parties' agreed estate plan and contained substantial marital property. Jennifer also alleged that,

after Rocco amended his revocable trust, he moved almost all of the estate's substantial liquid assets, which was marital property, into that trust.[1]

¶ 2　　Rocco moved the trial court, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)), to strike and dismiss Jennifer's emergency motion for failure to state a cause of action upon which relief could be granted. Rocco argued, *inter alia*, that the court was bound by the decision in *In re Marriage of Centioli*, 335 Ill. App. 3d 650 (2002), which, according to Rocco, held that a spouse could change the beneficiary of a revocable trust while a dissolution proceeding was pending. The trial court granted, in part, Rocco's motion to strike and dismiss. Specifically, the court dismissed Jennifer's claim challenging Rocco's amendment of his revocable trust but allowed her to amend her claim challenging Rocco's transfer of funds to his revocable trust after he amended that trust.

¶ 3　　Jennifer appealed the court's dismissal of her claim concerning Rocco's amendment of his revocable trust, arguing that her emergency motion stated a cause of action because *Centioli* either was not controlling precedent or was wrongly decided and should be overturned by this court. Also before this court is Rocco's motion to dismiss Jennifer's appeal for lack of jurisdiction.

¶ 4　　For the reasons that follow, we dismiss this appeal based on lack of jurisdiction.

¶ 5　　　　　　　　　　　　I. BACKGROUND

¶ 6　　Rocco's petition for dissolution of marriage was filed on October 3, 2017. He alleged therein that he and Jennifer were married in September 1989. They were both 47 years old. He was

---

[1] As discussed in detail below, Jennifer would later redact this allegation before the trial court as an inadvertent error.

voluntarily retired, and Jennifer was not employed. Their three children were 22, 19, and 14 years old. Rocco alleged that Jennifer would not need either maintenance or attorney fees if the marital property was divided equally.

¶ 7 Jennifer's response and counter-petition requested an equitable distribution of marital property and alleged a need for maintenance, child support, and a contribution to her attorney fees.

¶ 8 On April 6, 2018, Jennifer filed a two-count emergency motion for injunctive relief, alleging that her counsel had recently obtained documents showing that Rocco had shifted nearly all of the parties' substantial marital assets into his revocable trust (the Rocco III Trust).[2] Jennifer alleged that Rocco was attempting to exempt the bulk of their marital property from the court's equitable powers. She asked the trial court to return the parties to the *status quo* that existed prior to Rocco's improper acts of "divorce planning" by requiring Rocco to immediately revoke his June 27, 2017, amendments to the Rocco III Trust, which removed Jennifer as the successor trustee and as beneficiary of that trust. In the alternative, she asked the court to reinstate her as the successor trustee to the Rocco III Trust and name her as beneficiary. She also asked the court to require Rocco to replace any and all funds he removed from the marital estate after June 27, 2017.

¶ 9 According to Jennifer's emergency motion, the parties had formed a company in 1995, and Jennifer had assisted in the operation of that company while she was the primary caretaker of the children. During their marriage, the parties engaged the services of the law firm of Huck Bouma for estate planning and the creation of several trusts. Five irrevocable trusts were created, and

---

[2] As discussed in detail below, Jennifer would later redact her allegation that Rocco transferred the bulk of the parties' substantial assets into his revocable trust and concede that those substantial assets had been held in that trust for many years as part of the parties' estate plan.

Jennifer was a beneficiary of only two of those trusts. One of those two trusts had no liquid assets. The other would change the beneficiary designation in 2020 to Rocco, and the *res* in that trust would pass to the children upon his death. In addition to the five irrevocable trusts, the parties created in 2003 the revocable Rocco III Trust and named Jennifer as the beneficiary and successor trustee. When amendments were made to the Rocco III Trust in 2013 and 2015, Jennifer remained the beneficiary and successor trustee. The parties sold their company in 2015, and the proceeds of that sale comprised most of the parties' marital estate.

¶ 10     Jennifer alleged that, unbeknownst to her, Rocco engaged The Estate Planning Group to amend the Rocco III Trust on June 27, 2017. These amendments (1) removed Jennifer as the beneficiary and successor trustee, (2) added Rocco's statement that he specifically disinherited Jennifer, who would be considered to have predeceased him, and (3) deleted the provision that any community property that was transferred into the trust would retain its character during Rocco's and Jennifer's lives as if it had not been transferred into the trust. Jennifer also alleged that, after June 27, 2017, Rocco transferred 99% of the parties' non-real estate assets—*i.e.*, essentially the entirety of the parties' liquid marital assets—into the Rocco III Trust without her knowledge or agreement. (Jennifer would subsequently redact this allegation during argument on Rocco's motion to dismiss her emergency motion). In a document that has been sealed by the trial court and this court, Jennifer listed the assets in the Rocco III Trust, which were worth over $60 million.

¶ 11     Count I of Jennifer's motion asked the trial court to issue a temporary injunction and thereafter a preliminary injunction to require Rocco to (1) either revoke the June 27, 2017, amendments to the Rocco III Trust or, in the alternative, name Jennifer as the beneficiary to the

June 27, 2017, amendments to that trust, and (2) return all funds he removed from the marital estate and transferred to the Rocco III Trust after June 27, 2017.

¶ 12    Count II of Jennifer's motion asked the trial court to issue a temporary restraining order and preliminary injunction to restrain Rocco from (1) making any changes to the Rocco III Trust, removing Jennifer as the successor trustee and beneficiary, and making any further changes, revisions, amendments or revocations to any estate plan or accounts, and (2) transferring, spending, borrowing against, modifying, dissipating, withdrawing, or otherwise disposing of any funds in the Rocco III Trust or the marital estate except in the ordinary course of business and for regular and customary family expenses.

¶ 13    Jennifer asserted that (1) she had an ascertainable right in need of protection, *i.e.*, the ultimate equitable distribution of the marital estate, (2) she would suffer irreparable harm and had no adequate remedy at law because if Rocco died while this case was pending then his removal of over $60 million from the marital estate would become permanent and she would be foreclosed from receiving most the parties' estate when the court ultimately distributed the parties' assets, and (3) she had a substantial likelihood of success on the merits of her petition because the property at issue in this matter was marital.

¶ 14    At the April 6, 2018, hearing on Jennifer's emergency motion, Rocco's counsel stated, *inter alia*, that no basis existed upon which to characterize this matter as an emergency because the $60 million was not moved out of the marital estate but rather remained in the same revocable trust that it had been held in for years as part of the joint estate planning the parties had done years ago. Rocco's counsel stated that the money was kept in Rocco's name in his revocable trust in

response to Jennifer's prior actions of filing for divorce, draining all the accounts, and leaving the state.

¶ 15    After the short hearing, the court determined that the matter did not constitute an emergency and granted Rocco time to respond or otherwise plead.

¶ 16    On April 17, 2018, Rocco moved the court, pursuant to section 2-615 of the Code, to strike and dismiss Jennifer's emergency injunction motion, arguing that she failed to state a cause of action upon which relief could be granted because this matter was controlled by the ruling in *Centioli*, which held that a spouse could not be enjoined from changing the beneficiary designation of an *inter vivos* revocable trust while dissolution proceedings were pending because a beneficial interest was a mere expectancy interest rather than a present property interest. Rocco argued, *inter alia*, that Jennifer's beneficial interest was not a clearly ascertainable right that could be protected by injunctive relief. He also argued that her emergency motion was factually deficient because she could not demonstrate any of the requisite elements for a preliminary injunction.

¶ 17    Jennifer responded that (1) she had a present right to the assets Rocco had moved into the Rocco III Trust because those assets were the proceeds from the sale of the parties' company, which was clearly marital property; (2) she had a vested right to an equitable share of the marital property, including the over $60 million in the Rocco III Trust; (3) Rocco's unilateral trust amendments and fund transfers were a fraud against Jennifer's marital rights; (4) Rocco's unilateral removal of Jennifer as successor trustee of the Rocco III Trust deprived her of the right to handle the assets of the trust—including dissolving the trust—as the parties' estate plan had intended; (5) the caselaw did not support Rocco's assertion that the court could not redress Rocco's complained-of actions; (6) $18 million was owed on the real estate assets Jennifer would receive

by joint ownership if Rocco died while this action was pending; (7) having access through another trust for the income from a $30 million life insurance policy death benefit, which Jennifer would not control, was not an adequate remedy for the loss of over $60 million of marital property; (8) the court could order Rocco to refund the $1.5 million he had moved from his checking account into the Rocco III Trust after June 27, 2017; and (9) Jennifer was entitled, at a minimum, to an evidentiary hearing where Rocco would testify under oath about why he maneuvered the Rocco III Trust as he did and what he intended to do with his sole control of the funds.

¶ 18     At the April 30, 2018, hearing on Rocco's motion to dismiss, Rocco's counsel asked that Jennifer's allegation—that Rocco had moved over $60 million, which constituted about 99% of the parties' liquid estate, into the Rocco III Trust after June 27, 2017—should be withdrawn because the allegation was false, Jennifer did not include that allegation in her affidavit, and the *res* of the Rocco III Trust remained within the reach of the divorce court, which had the authority to allocate those assets at the time of dissolution. Jennifer's counsel redacted the challenged allegation, explaining that it was an inadvertent error. After hearing argument on the motion to dismiss, the court concluded that an evidentiary hearing was not necessary.

¶ 19     On May 1, 2018, the trial court issued a written order granting, in part, Rocco's motion to strike and dismiss Jennifer's emergency motion for an injunction. Applying *Centioli*, the court found that Jennifer could not establish that she possessed a certain and clearly ascertainable right that needed protection. The court therefore concluded as a matter of law that it could not enjoin Rocco from either changing the beneficiary designation on his revocable *inter vivos* trust or amending his trust to remove Jennifer as successor trustee. However, the court ruled that Jennifer's separate request to require Rocco to return any funds he had removed from the marital estate and

transferred into the Rocco III Trust after June 27, 2017, might satisfy the requirements for an injunction but Jennifer failed to plead sufficient facts upon which that relief could be granted. The court's order gave Jennifer leave to file within 21 days an amended motion "seeking injunctive relief pursuant to the findings herein."

¶ 20    On May 21, 2018, Jennifer timely filed an amended emergency motion for an injunction, which asked the court to order Rocco to return to a joint account any funds he transferred to the Rocco III Trust after June 27, 2017, and to enjoin him from transferring any more funds into the Rocco III Trust. Jennifer stated that her amended motion concerned only the grounds on which the court granted her leave to amend; this motion did not concern her request to require Rocco to maintain her as the successor trustee and beneficiary of the Rocco III Trust by revocation, modification, or future restraint because the court had granted Rocco's motion to strike and dismiss that claim.

¶ 21    Rocco moved the court to dismiss, pursuant to section 2-619 of the Code, Jennifer's amended emergency motion regarding an alleged transfer of assets into the Rocco III Trust after June 27, 2017. Jennifer did not notice her amended emergency motion for a hearing, and the parties have stated in their appellate pleadings and briefs that Jennifer's amended motion remains pending and undetermined in the trial court.

¶ 22    On May 30, 2018, Jennifer moved the court to reconsider the May 1, 2018, order. She argued, *inter alia*, that *Centioli* was not applicable to the facts of her case and new authority on trust law supported her assertion that her prior remainder interest was not just an expectancy.

¶ 23    Rocco responded that Jennifer had abandoned her claim regarding the funds in the Rocco III Trust before June 27, 2017, by not including that claim in her amended motion. Rocco argued

that the trial court appropriately applied *Centioli*, which was still good law, and Jennifer presented no new evidence and could have raised the trust cases at the prior hearing on the motions.

¶ 24 Jennifer replied that she did not waive her claim regarding the funds in the Rocco III Trust before June 27, 2017, because her amended motion was limited to the issue on which the trial court had permitted her to submit an amended pleading. Moreover, her motion to reconsider clearly showed that she was not forfeiting her claim regarding the funds in the Rocco III Trust before June 27, 2017. She argued that Rocco had admitted the marital character of the Rocco III Trust funds based on his counsel's arguments at the hearing on Rocco's motion to dismiss. She also argued that the trial court was entitled to look at trust law to revisit its determination about *Centioli* and she was allowed to cite additional authority to attack the efficacy of the reasoning in the court's May 1 order.

¶ 25 On August 9, 2018, the court heard argument on Jennifer's motion to reconsider the May 1, 2018, order. On September 17, 2018, the trial court denied that motion, finding that Jennifer did not show an error in the court's application of existing law.

¶ 26 On October 10, 2018, Jennifer moved the trial court for a finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying the appeal of the May 1 and September 17, 2018, orders. She argued that the portion of her original emergency motion for injunctive relief regarding the modification of the trust was ripe for appeal because the issue was "exhausted before the trial court." She also argued that the May 1 and September 17, 2018, orders were final as to the issue of whether the trial court could require Rocco to reinstate her to the Rocco III Trust and this issue was entirely and completely separate from the remaining issues in the case.

¶ 27    On October 11, 2018, Jennifer filed a notice of appeal from the May 1 and September 17, 2018, orders.

¶ 28    On October 18, 2018, the trial court ordered the parties to submit by November 11, 2018, proposed orders concerning Jennifer's request for a Rule 304(a) finding.

¶ 29    On October 23, 2018, Jennifer filed her docketing statement in this court, which stated that her appeal was filed pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), which allows an appeal as of right for an interlocutory order of the court refusing an injunction. She also filed in this court a motion to stay the time for filing the docketing statement, supporting record, and brief, pending the trial court's ruling on her motion for a Rule 304(a) finding. She stated that a stay issued by this court would be an efficient use of judicial time and resources, this matter would better lend itself to an appeal under Rule 304(a) than Rule 307(a)(1), and if the trial court granted her a Rule 304(a) finding, she would abandon her claim under Rule 307(a)(1) and thereby eliminate any jurisdictional issue in this court. Jennifer, however, failed to include on her October 11, 2018, notice of appeal the required "Notice of Interlocutory Appeal" label when a notice of appeal is premised on Rule 307. See Ill. S. Ct. R. 307 (eff. Nov. 1, 2017).

¶ 30    On October 30, 2018, Rocco filed a motion in this court to dismiss Jennifer's appeal, alleging that this court lacked jurisdiction because the May 1 and September 17, 2018, orders were neither final nor appealable. He argued that Jennifer's Rule 307(a)(1) interlocutory appeal was untimely and must be dismissed for lack of jurisdiction. He also argued that Jennifer could not invoke Rule 304(a) to save her untimely Rule 307(a)(1) interlocutory appeal.

¶ 31    On November 1, 2018, Jennifer moved this court for leave to amend her docketing statement to add Illinois Supreme Court Rule 304(b)(1) (eff. March 8, 2016)—which allows the

appeal of an order in the administration of an estate, guardianship, or similar proceeding that finally determines a right or status of a party—as an additional basis for this court's jurisdiction. On November 5, 2018, Jennifer filed her objection to Rocco's motion to dismiss her appeal.

¶ 32    On November 6, 2018, this court (1) granted Jennifer, over Rocco's objection, leave to amend her docketing statement to add Rule 304(b)(1) as another basis for asserting appellate jurisdiction; (2) denied Jennifer's motion to stay the time for filing the docketing statement, supporting record, and brief, pending the trial court's ruling on her motion for a Rule 304(a) finding; and (3) ruled that Rocco's motion to dismiss Jennifer's appeal would be taken with the case.

¶ 33    On November 16, 2018, the trial court denied Jennifer's motion for a Rule 304(a) finding.

¶ 34                                II. ANALYSIS

¶ 35                                 Jurisdiction

¶ 36    Jurisdiction is a threshold issue which may be raised at any time (*Geise v. Phoenix Co. of Chicago, Inc.*, 159 Ill. 2d 507, 515 (1994)), and this court has an independent duty to consider its jurisdiction and dismiss an appeal where jurisdiction is lacking (*Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 542 (2011)). The appellant bears the burden of establishing jurisdiction. *U.S. Bank National Ass'n v. IN Retail Fund Algonquin Commons, LLC*, 2013 IL App (2d) 130213, ¶ 24 (citing Ill. S. Ct. R. 341(h)(4) (eff. July 1, 2008)).

¶ 37    Jennifer argues that this court has jurisdiction over her interlocutory appeal based on Rule 307(a)(1), which allows an interlocutory appeal from a trial court order refusing an injunction. Jennifer argues in the alternative that this court's jurisdiction is based on Rule 304(b)(1), which authorizes an appeal without a Rule 304(a) special finding for an order entered in the

administration of an estate, guardianship, or similar proceeding that finally determines a right or status of a party.

¶ 38    Rule 307 "confers on parties the right to appeal certain interlocutory orders before entry of final judgment by the circuit court." *Salsitz v. Kreiss*, 198 Ill. 2d 1, 11 (2001). According to the plain language of Rule 307(a), a party is allowed to appeal an interlocutory order as long as the appeal is "perfected within 30 days from the entry of the interlocutory order" by filing a notice with this court. Ill. S. Ct. R. 307(a) (eff. Nov. 1, 2017). Accordingly, Jennifer's due date to appeal the trial court's May 1, 2018, interlocutory order that denied her request for an injunction was May 31, 2018. Jennifer, however, did not file her notice of appeal until October 11, 2018.

¶ 39    Furthermore, Jennifer's May 30, 2018, motion to reconsider the May 1, 2018, interlocutory order did not toll the time for filing her appeal. See *Trophytime, Inc. v. Graham*, 73 Ill. App. 3d 335, 335 (1979); see also *People v. Marker*, 233 Ill. 2d 158, 174 (2009) (a motion to reconsider does not toll the deadline for filing a notice of appeal of an interlocutory order in a civil matter); *Craine v. Bill Kay's Downers Grove Nissan*, 354 Ill. App. 3d 1023, 1025-29 (2005) (the denial of a motion to reconsider is not an appealable interlocutory order pursuant to Rule 307(a)(1)); *Robert A. Besner & Co. v. Lit America, Inc.*, 214 Ill. App. 3d 619, 625-26 (1991) (the plaintiff's notice of appeal from the trial court's denial of plaintiff's motion to reconsider was meaningless because an appeal subject to Rule 307(a)(1) must be timely taken); *In re Adoption of Anderson*, 88 Ill. App. 3d 42, 44 (1980) (if a litigant chooses to appeal an interlocutory order under Rule 307(a)(1) instead of waiting for the court to issue a final order, then the litigant has only 30 days from the entry of the interlocutory order to perfect an appeal). Consequently, we conclude that Rule 307(a)(1) is not a basis for this court to exercise jurisdiction over Jennifer's interlocutory appeal.

¶ 40    If a litigant has not obtained the trial court's special finding under Rule 304(a) that there is no reason to delay an appeal of a final order that does not dispose of an entire proceeding, that final order is appealable in certain specified situations, such as when the order was "entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). The plain language of Rule 304(b)(1) establishes that it does not apply to Jennifer's appeal of the May 1, 2018, interlocutory order refusing to enter an injunction. See *Stephen v. Huckaba*, 361 Ill. App. 3d 1047, 1051 (2005) (only final orders—*i.e.*, orders that resolve all matters on a particular issue—fit within Rule 304(b)(1)).

¶ 41    The accompanying Committee Comments to Rule 304(b)(1) confirm its narrow application and limited reach, clarifying that it "applies to orders that are final in character although entered in comprehensive proceedings that include other matters. Examples are an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1988). "Rule 304(b)(1) is designed to prevent multiple lawsuits and piecemeal appeals, while encouraging efficiency and granting certainty as to specific issues during the often lengthy process of estate administration." *In re Estate of Thorp*, 282 Ill. App. 3d 612, 616-17 (1996) ("Without the Rule 304(b)(1) exception, an appeal would have to be brought after an estate was closed, the [impractical and inefficient result of which might] require reopening the estate and marshalling assets that have already been distributed.").

¶ 42    Rule 304(b)(1) does not apply to the nonfinal May 1, 2018, order here. See *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 397 (1993) (a preliminary injunction "is merely provisional in nature and concludes no rights"). In addition, the May 1, 2018 order, which involved the denial of

injunctive relief in a divorce case where the court was not involved in the privately administered Rocco III Trust, does not fall within the scope of the subject matter of Rule 304(b)(1), *i.e.*, the administration of an estate, guardianship, or similar proceeding. Consequently, we conclude that Rule 304(b)(1) is not a basis for this court to exercise jurisdiction over Jennifer's interlocutory appeal.

¶ 43                                  III. CONCLUSION

¶ 44     For the foregoing reasons, we dismiss this appeal based on lack of jurisdiction.

¶ 45     Appeal dismissed.

---

**No. 1-18-2185**

---

| | |
|---|---|
| **Cite as:** | *In re Marriage of Salviola*, 2020 IL App (1st) 182185 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 17-D-8494; the Hon. Edward A. Arce, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Joel S. Ostrow, of Bannockburn, and Michelle L. Cassidy, of Reed Centracchio & Associates, LLC, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michele M. Jochner, Karen Pinkert-Lieb, and Thomas F. Villanti, of Schiller DuCanto & Fleck LLP, of Chicago, for appellee. |

---