2024 IL App (1st) 220651-U

SECOND DIVISION
March 5, 2024

No. 1-22-0651

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| ILLINOIS DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES ex rel. CRISTAL RICE, | ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois, County Department, Domestic Relations Division |
| Petitioner-Appellee, | ) | |
| v. | ) | No. 2006-D-091394 |
| | ) | |
| EDWARD HAMBRICK, | ) ) | Hon. Renee G. Goldfarb, Judge Presiding |
| Respondent-Appellant. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held*: Affirmed in part, dismissed in part. Court did not err in denying section 2-1401 petition based on lack of personal jurisdiction. Appellant forfeited review of various other rulings. Appellate court lacks jurisdiction to consider certain orders.

¶ 2     Respondent Edward Hambrick, *pro se*, appeals various judgments entered in the circuit court regarding his parentage and child-support obligations. We dismiss the appeal in part for lack of our own jurisdiction. We otherwise find no error and affirm.

¶ 3                                    BACKGROUND

¶ 4      In October 2006, petitioner, the Department of Healthcare and Family Services (the Department), filed a uniform support petition on behalf of Cristol Rice. The petition sought to determine the existence of a parental relationship between respondent and Rice's two minor children and to establish his child-support obligations.

¶ 5      The Cook County State's Attorney's Office certified service of process on respondent. The affidavit of service stated that, on March 3, 2007, an investigator at the State's Attorney's Office served a copy of the petition and summons on respondent via personal service at a residence located at 17112 Magnolia Drive in Country Club Hills, Illinois. The affidavit stated that the name of the person served was "Edward Hambrick" and described him as a 33-year-old black male.

¶ 6      On May 10, 2007, the circuit court held a hearing on the petition, but respondent failed to appear. Based on Rice's uncontested affidavit, the circuit court found that Hambrick was the father of her two children. The circuit court entered a default child support order that required Hambrick to pay $100 per month in child support, as well as $800 in retroactive child support.

¶ 7      Eleven years later, in May 2018, respondent filed a "Petition to Declare Default Order of Parentage Void Ab Initio," claiming that he was not properly served with process. The petition noted that respondent "was allegedly served with process by substitute service in this case at 17112 Magnolia Dr., Country Club Hills, Illinois," but alleged that "substitute service *** was not proper substitute service, as 17112 Magnolia Dr., Country Club Hills, Illinois was not [respondent]'s usual place of abode at that time." He further noted that "[i]n the case of substitute service, there is no presumption of validity of the affidavit of service."

¶ 8    Respondent alleged, with supporting documentation, that at the relevant time he resided at a specified address in Matteson, Illinois. Thus, he argued, substitute service was improper in this case.

¶ 9    In response, the Department noted that respondent was not served by substitute service; he was served by *personal* service, so the location where he was served was irrelevant, as was his residential address. Because the affidavit of served described respondent personally as the one who was served, service was proper.

¶ 10    The court set a hearing date of August 21, 2018 on respondent's petition. Respondent did not appear, so the court struck his petition and specifically noted that it was not considering it on the merits. The record does not disclose that respondent took any further action on this petition.

¶ 11    Some two and a half years later, in January 2022, respondent filed a "Motion for Public Official Bond; Assurance of Faithful Performance of Oath; Official Transcripts." From what we can discern, the bulk of this motion concerned the behavior of certain assistant state's attorneys in a Will County criminal action involving respondent. The motion appeared to also discuss the actions of the Department's attorneys in this case. The record references that the court denied the motion in February 2022, though we are unable to locate that order in the record.

¶ 12    In March 2022, respondent filed a "Motion to Terminate/Vacate Child Support Order." Among other things, he claimed that he "did not receive the Support Order at his correct address." Note that this was respondent's second motion to vacate, following the striking of his first one as detailed two paragraphs above.

¶ 13    On April 5, 2022, respondent filed a "Notice of Special Appearance—Mandatory Judicial Notice—Motion to Vacate—Notice of Subrogation." He claimed to be filing a special appearance to appear only "as a man and as beneficiary and executor of the estate named [in] this

matter Edward Hambrick." He appointed the "court prosecutor" as "trustee to settle and set off any claims originally brought forth in 2006 by this prosecutor." He sought to vacate all orders entered in this lawsuit and to "require the prosecutor to certify my right to subrogation." He concluded with the notice "that any damages to me shall incur a cost and bill of damages by any party in conspiracy with such false claims at a rate of $250,000 per day, per person, if this matter continues and beginning 72 hours after receipt of this notice, if this matter is not settled in full."

¶ 14    On April 14, 2022, the circuit court denied both motions identified immediately above.

¶ 15    On May 10, 2022, respondent filed a notice of appeal. The notice of appeal identified five orders or judgments of the circuit court: (1) the original May 10, 2007 order of parentage and child support; (2)  the August 21, 2018 order striking respondent's challenge to the child-support order; (3) an order apparently dated February 4, 2022; (4) an order apparently dated February 16, 2022; and (5) the judgment order dated April 14, 2022, denying the motion to vacate child support order and the "Notice of Special Appearance—Mandatory Judicial Notice—Motion to Vacate—Notice of Subrogation."

¶ 16                             ANALYSIS

¶ 17                           I. Jurisdiction

¶ 18    We have a duty to consider our own jurisdiction, even if no party raises it. *Village of Kirkland v. Kirkland Properties Holdings Co., LLC I*, 2023 IL 128612, ¶ 37 ("Courts of review have an independent duty to consider jurisdiction because a jurisdictional claim is a threshold issue that must be addressed before considering an appeal's merits."). The appellate court has no discretion to excuse compliance with the jurisdictional requirements in the supreme court rules. *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 217 (2009).

¶ 19                        A. August 21, 2018 Order

¶ 20    We first consider our jurisdiction over the August 21, 2018 order striking respondent's motion to vacate based on improper service (and thus lack of personal jurisdiction). By this we mean respondent's *first* motion to vacate. (See *infra* ¶¶ 7-10.) The Department correctly notes that the motion to vacate, filed well over two years after entry of the 2007 parentage and child-support order, in substance was a section 2-1401 petition attacking that final judgment. See 735 ILCS 5/2-1401 (West 2016); *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 106 (2002) (motion to vacate judgment, filed 7 years after entry of that judgment, based on improper service of process, constituted section 2-1401 petition).

¶ 21    Illinois Supreme Court Rule 304(b)(3) (eff. Mar. 8, 2016) grants us jurisdiction to review "[a] judgment or order granting or denying any of the relief prayed in a petition under section 2-1401 of the Code of Civil Procedure." We have interpreted appeals under Rule 304(b) as requiring the review of only *final* judgments. See *Sokolski v. Sokolski*, 2023 IL App (1st) 220744-U, ¶ 21 (cited for persuasive purposes under Supreme Court Rule 23); *D'Agostino v. Lynch*, 382 Ill. App. 3d 639, 642 (2008) ("Rule 304(b) makes certain specific types of final orders that do not dispose of an entire proceeding immediately appealable without a special finding"); *In re Guardianship of J.D.*, 376 Ill. App. 3d 673, 676 (2007) (noting that Rules 301, 303, and 304 "are applicable only to final judgments"). Indeed, the specific language in Rule 304(b)(3) is in keeping with the notion of finality, permitting jurisdiction to review orders "granting or denying" relief under section 2-1401. Ill. S. Ct. R. 304(b)(3) (eff. Mar. 8, 2016).

¶ 22    Here, the August 21, 2018 order read as follows: "Respondent's motion is stricken due to his failure to appear, not having been heard on the merits. Matter off call."

¶ 23    That order was not a final judgment. Striking an order is not denying it, unless the order includes the language "with prejudice" or, in some other way, the context demands it be

considered a final judgment. *Belluomini v. Lancome*, 207 Ill. App. 3d 583, 586 (1990); cf. *B-G Associates, Inc. v. Giron*, 194 Ill. App. 3d 52, 59 (1990) (striking of motion "with prejudice" was final judgment). The order made clear that the motion was *not* being decided on the merits and that it was simply being stricken from the court call that day. Thus, "the motion, although stricken from the court call, remained pending." *Lancome*, 207 Ill. App. 3d at 586.

¶ 24    Because the August 21, 2018 order was not a final judgment—or tracking Rule 304(b)(3), it was not an order "granting or denying" the section 2-1401 petition—we have no jurisdiction to review that order. *Johnson v. Armstrong*, 2022 IL 127942, ¶ 24. We dismiss that portion of the appeal.

¶ 25                    B. Orders Dated February 4 and February 16, 2022

¶ 26    Next, respondent appeals two orders—an order apparently dated February 4, 2022, and an order apparently dated February 16, 2022—that are not in the record on appeal, nor are they appended to the notice of appeal. The circuit clerk's common-law record table of contents does not show any such orders, nor does our review of the record as a whole. The circuit clerk's "case summary" dockets an order granting a continuance on February 4, 2022 and contains no entry for February 16, 2022. In any event, we find neither order in the record.

¶ 27    The appellant bears the burden of establishing jurisdiction. *In re Marriage of Salviola*, 2020 IL App (1st) 182185, ¶ 36; *U.S. Bank National Ass'n v. In Retail Fund Algonquin Commons, LLC*, 2013 IL App (2d) 130213, ¶ 24; see Ill. S. Ct. R. 341(h)(4) (eff. Oct. 1, 2020). If the appellant cannot carry that burden, we must dismiss the appeal. *Marriage of Salviola*, 2020 IL App (1st) 182185, ¶ 36; *Algonquin Commons, LLC*, 2013 IL App (2d) 130213, ¶ 24.

¶ 28    As should be clear from our earlier discussion of appellate jurisdiction, our jurisdiction to review a judgment order depends, first and foremost, on the substance of the order itself. There

are many different rules under which a judgment may be appealed and, just as importantly, the time frame in which it must be appealed. But without the judgment orders themselves, we cannot possibly know if the judgment orders at issue were final and appealable judgments, whether they fit within a specific exception to the typical jurisdictional rules, and when those orders (from February 2022) were required to be appealed. Absent those orders, we cannot possibly confirm our jurisdiction.

¶ 29    It is the appellant's obligation to ensure a complete record on appeal. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Any doubts arising from the incompleteness of the record will be resolved against the appellant. *Id*. Because respondent has not carried his burden of demonstrating our jurisdiction to review the orders dated February 4 and February 16, 2022, we dismiss that portion of this appeal. See *Marriage of Salviola*, 2020 IL App (1st) 182185, ¶ 36; *Algonquin Commons*, 2013 IL App (2d) 130213, ¶ 24.

¶ 30                                    C. May 10, 2007 Order

¶ 31    We agree with the Department that we also lack jurisdiction to review the original 2007 order of parentage and child support, at least on the merits. The child-support and parentage order was a final and appealable judgment. See *Deckard v. Joiner,* 44 Ill.2d 412, 417 (1970); *Department of Healthcare & Family Services ex rel. Daniels v. Beamon*, 2012 IL App (1st) 110541, ¶ 9. Respondent was required to appeal that judgment within 30 days. See Ill. S.Ct. R. 303(a)(1) (eff. July 1, 2017). His notice of appeal, filed fifteen years later, was untimely, depriving us of jurisdiction. See *Beamon*, 2012 IL App (1st) 110541, ¶ 10. We dismiss that portion of the appeal as well.

¶ 32    But with one caveat: While this court has no jurisdiction to review the *merits* of that 2007 parentage and child-support order, another motion at issue here collaterally attacks that 2007

order based on improper service—meaning a lack of personal jurisdiction. If that motion were ultimately sustained, the 2007 order would be void *ab initio*. *Department of Healthcare & Family Services ex rel. Sanders v. Edwards*, 2022 IL App (1st) 210409, ¶ 42.

¶ 33                                    II. Forfeiture

¶ 34     With those portions of the appeal dismissed, that leaves us with only the appeal of the April 14, 2022 judgment that finally disposed of this matter in the circuit court. That judgment order denied two substantive motions, one of which was respondent's "Notice of Special Appearance—Mandatory Judicial Notice—Motion to Vacate—Notice of Subrogation."

¶ 35     As happens so often, unfortunately, with *pro se* appellate briefs, we must consider the question of forfeiture—the failure to raise or properly support a legal position or otherwise provide the court with necessary information. See *Gillard v. Northwestern Memorial Hospital*, 2019 IL App (1st) 182348, ¶ 45. We are willing to go the extra mile to forgive deficiencies in a brief prepared by one who lacks legal training. But as we have explained before, there is and must be a limit to our tolerance; the more we try to bring coherence to an incoherent position, the more we search the record to find support for a position that the appellant failed to provide us, the more we take various criticisms sprinkled throughout a brief and try to mold them into an articulate point of error, the more we risk straying from an independent tribunal to that party's advocate. See *Bozek v. Bank of America, N.A.*, 2021 IL App (1st) 191978, ¶ 100; *CE Design, Ltd. v. Speedway Crane, LLC*, 2015 IL App (1st) 132572, ¶ 18 (appellate court may not act as advocate or seek error in record). That is a line we cannot cross. And so too, here, we must find forfeiture with regard to several portions of this appeal.

¶ 36     As described in more detail above (see *infra* ¶ 13), it is exceedingly difficult for this court to understand respondent's "Notice of Special Appearance—Mandatory Judicial Notice—

Motion to Vacate—Notice of Subrogation," much less to identify any legal merit within it. Respondent sought to file a "special appearance" for the purpose of this motion; he purported to appoint opposing counsel as his "trustee" and require that lawyer "to certify [his] right to subrogation." He then demanded that all orders in this lawsuit be vacated and, if they were not within 72 hours, he was entitled to damages of a quarter of a million dollars, per day, per person responsible.

¶ 37     Nowhere in his appellate brief has respondent even tried to explain how he was entitled to any of these things. Though we credit respondent with handwriting a lengthy, detailed brief, the vast majority of his arguments are a general critique of the judges who heard his case, including complaints about continuances, substitutions of judge, transfers to different courtrooms, as well as criticisms of attorneys for the Department. For example, he argues that the court failed to show "proper care and leniency for *pro se* defendant[,] allowing violations of the principle of equal treatment and due process under the law" and demonstrated "disregard for constitutional rights and a failure to uphold the principle of accountability." But he does not explain which of the several judgment orders under review were impacted by these examples.

¶ 38     To put a finer point on it, in explaining that he was denied "equal treatment under the law," respondent cites these examples: "(1) Defendant was not properly notified to appear (2) Defendant was ridiculed and his [credibility] attack[ed] because he was not vaccinated with a non-FDA approved vaccine (3) Public officers lied and abused it[s] policy using 'Bait and Switch tactics' to confuse or deter or create ineffective defense of Appellant (4) Court threaten[ed] to send sheriff to his home to prevent or deter him from exercising his right to free speech in a public forum while in his home during a hearing via video conferencing (5) Defendant was coerced to accept a change in venue falsely described as a scheduling event to

procure a court with prosecutorial and state appellant experience." That is a mere sample, but these criticisms—with no citations to the record or transcripts of proceedings—are not linked to any particular ruling the court made, much less one that this court has jurisdiction to review.

¶ 39     And even when respondent does reference a motion, he does not identify which one. For example, he argues that, "[b]y dismissing the appellant's motion and violating his rights, the court erodes the principles necessary for a just legal system. The court's dismissal of the appellant's motion obstructs transparency in legal proceedings." But nowhere does he identify which motion he is referencing, which judgment order he is challenging.

¶ 40     But returning to our point: Respondent cites no authority for his right to file a "special appearance," to appoint opposing counsel as "trustee" to certify his right to "subrogation," or to demand the vacatur of the entire suit on pain of damages. Respondent's failure to identify any applicable legal authority, much less explain how the circuit court erred in denying the motion, results in his forfeiture of any challenge to the order denying this motion. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020); *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) ("Both argument and citation to relevant authority are required. An issue that is merely listed or included in a vague allegation of error is not 'argued' and will not satisfy the requirements of [Rule 341].").

¶ 41                         III. Motion to Vacate for Improper Service

¶ 42     That leaves us with one remaining point of error: the denial of respondent's "Motion to Terminate/Vacate Child Support Order" that was entered on April 14, 2022. Like the first motion to vacate, this second motion to vacate was in substance a motion brought under section 2-1401. See *Sarkissian*, 201 Ill. 2d at 106. Our jurisdiction is proper, as Supreme Court Rule 304(b)(3) permits appeals of judgments denying section 2-1401 motions, and respondent filed his notice of appeal within 30 days of that judgment. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994), 304(b)(3) (eff.

Mar. 8, 2016).

¶ 43    As with several of respondent's motions, the motion at issue here contained a good many

arguments. One of them attacked service of process (and thus personal jurisdiction) for the

second time, after respondent's first challenge to service was stricken and never re-noticed, as

explained above. He also argued that the mother of his children "left the State of Illinois

illegally" after respondent sought custody of them back in 2006, before this litigation began; and

that the Department was now seeking child-support payments in arrears, though respondent had

paid his child support in full.

¶ 44    The only portion of this motion that is mentioned even briefly in respondent's appellate

brief concerns the lack of service of process and thus lack of personal jurisdiction. For the

reasons we have already given regarding forfeiture, we will thus review only the challenge to

service of process.

¶ 45    It is well settled that "a dispute over personal jurisdiction raised within a section 2-1401

petition normally 'presents a question of law, and rulings as to questions of law are considered

*de novo.*' " *Edwards*, 2022 IL App (1st) 210409, ¶ 44 (quoting *Jayko v. Fraczek*, 2012 IL App

(1st) 103665, ¶ 3). But "if any material evidentiary conflicts exist, and the circuit court conducts

an evidentiary hearing to resolve those disputes, we review the circuit court's factual findings for

manifest weight of the evidence." *Id.*; *Abbington Trace Condominium Ass'n v. McKeller*, 2016

IL App (2d) 150913, ¶ 10.

¶ 46    Here, we are aware of no evidentiary hearing on the "Terminate/Vacate Child Support

Order." And if one existed, we have no transcript of that proceeding. So our review is *de novo*.

¶ 47    Proper service of process on an individual is necessary for the court to acquire personal

jurisdiction over the party. *Edwards*, 2022 IL App (1st) 210409, ¶ 42. Forms of proper service in

Illinois include personal service and substitute service. 735 ILCS 5/2-203(a)(1)-(2) (West 2006).

Personal service entails "leaving a copy of the summons with the defendant personally." *Id*. § 2-203(a)(1). Substitute service, on the other hand, requires "leaving a copy at a defendant's usual place of abode, with some person of the family or a person residing there, of the age of 13 years or upwards," explaining the contents of the summons to that individual, and sending "a copy of the summons in a sealed envelope with postage fully prepaid, addressed to the defendant at his or her usual place of abode ***." *Id*. § 2-203(a)(2).

¶ 48     A "presumption of validity" attaches to an affidavit swearing that the defendant was served personally; the return of service is *prima facie* proof of service. *MB Financial Bank, N.A. v. Ted & Paul, LLC*, 2013 IL App (1st) 122077, ¶ 24; *Prudential Property & Casualty Insurance Co. v. Dickerson*, 202 Ill. App. 3d 180, 184 (1st Dist. 1990). A court is "required to indulge in every reasonable presumption" in favor of the return. *MB Financial Bank*, 2013 IL App (1st) 122077, ¶ 24. A defendant must overcome this presumption with "clear and convincing evidence." *Illinois Service Federal Savings & Loan Ass'n of Chicago v. Manley*, 2015 IL App (1st) 143089, ¶ 37.

¶ 49     "[T]he uncorroborated testimony of the party upon whom service is made is not enough to set aside this evidence." *MB Financial Bank*, 2013 IL App (1st) 122077, ¶ 24; see also *Freund Equipment, Inc. v. Fox*, 301 Ill. App. 3d 163, 166 (1998) (defendant's uncorroborated testimony that he was never served "is insufficient to overcome the presumption of service"); *Paul v. Ware*, 258 Ill. App. 3d 614, 617-18 (1994) (uncorroborated affidavit stating that defendant was not personally served is insufficient to overcome presumption of valid service).

¶ 50     The affidavit here swore that respondent was personally served at 17112 Magnolia Drive in Country Club Hills on March 3, 2007 at 10:20 a.m. The affidavit identified respondent by

name—Edward Hambrick—and described him as an African-American, age 33. At no time, below or on appeal, has respondent challenged that description of him. He merely argues that "he was never served by any Sheriff or Process Server *at said address*, as contended in the record." (Emphasis added.) As the Department has consistently noted, respondent's challenge is directed at substitute service, not personal service—and the affidavit clearly indicates that respondent was personally served with the summons.

¶ 51    We find no defect on the face of the affidavit, and respondent's uncorroborated testimony is insufficient to overcome the presumption of service. As respondent failed to offer clear and convincing evidence to overcome the presumption of service, we uphold the circuit court's denial of the motion to vacate.

¶ 52                             CONCLUSION

¶ 53    We dismiss this appeal in part and otherwise affirm the circuit court's judgment.

¶ 54    Appeal dismissed in part; affirmed in part.