2025 IL App (1st) 250562-U
Order filed August 25, 2025

FIRST DISTRICT
FOURTH DIVISION

No. 1-25-0562

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| RASHIDA THOMPSON, | ) | Cook County. |
| | ) | |
|     Petitioner-Appellant, | ) | No. 22 D 545 |
| | ) | |
|     v. | ) | |
| | ) | Honorable |
| CHRISTOPHER THOMPSON, | ) | Jill Rose Quinn, |
| | ) | Judge, presiding. |
|     Respondent-Appellee. | ) | |

_____

PRESIDING JUSTICE ROCHFORD delivered the judgment of the court.
Justices Lyle and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*: We dismissed this appeal from a post-dissolution order for lack of appellate jurisdiction.

¶ 2    Petitioner-appellant, Rashida Thompson, and her former husband, respondent-appellee Christopher Thompson are parents to three minor children (the children). Rashida appeals *pro se* from a post-dissolution order which imposed restrictions on a parent's phone calls to the children during parenting time with the other parent and provided that Rashida would be fined if she

contacted police to check on the children when they were with Christopher. We dismiss the appeal for lack of jurisdiction.

¶ 3     Our recitation of the facts and procedural background is based on the pleadings, documents and orders in the record. The record is without any transcripts of the proceedings.

¶ 4     Rashida and Christopher were married in 2011 and had three children, San. T. (born May 24, 2013), C.T. (born September 24, 2014), and Sal. T. (born January 16, 2016). Additionally, Christopher adopted Rashida's emancipated son from a previous relationship, Rahmad (born in 2003) and Rashida adopted Christopher's emancipated daughter from a previous relationship, Tianna (born in 2002).

¶ 5     Rashida filed a petition for dissolution of marriage on January 24, 2022. At the time the case was filed, Rashida was pursuing a pharmacy degree and she was paid hourly as a caretaker for her elderly mother and disabled sister. Christopher was employed full time, as an IT consultant, at St. Barnard Hospital.

¶ 6     On January 28, 2022, Rashida filed a petition for emergency order of protection (EOP) in the divorce action against Christopher. She alleged that Christopher was engaging in abusive and harassing behavior in the marital home (home). The court granted the EOP (January 2022 EOP) which placed the children in the care of Rashida, gave her possession of the home and prohibited Christopher from contacting Rashida and denied him parenting time. The January 2022 EOP was later extended and the matter was set for a hearing on a plenary order of protection (POP).

¶ 7     Before the hearing on the POP was held, Christopher filed a motion for allocation of parenting responsibilities. He alleged that when Rashida became a full-time student in August 2021, she lived in an apartment closer to her school; she rarely returned to the home until Christmas

time. During that period, he was the principal caretaker of the children and he sought primary allocation of parenting responsibility and time.

¶ 8    On February 22, the court appointed Erin M. Wilson as guardian *ad litem* (GAL Wilson) for the minor children as to "allocation of parenting responsibility and time, decision making, all parental matters."

¶ 9    On March 2, 2022, the January 2022 EOP was terminated. Additionally, the court entered an agreed order which stated that Rashida was withdrawing her petition for a POP. The order granted Rashida exclusive possession of the home. The order further provided that the parent who is not with the children "may have reasonable phone, text and video conference contact with the minor children, one time per day." Rashida and Christopher were prohibited from discussing the case with the children. The issue of parental allocation was reserved pending the investigation of GAL Wilson.

¶ 10    An order was entered on March 17, 2022, setting a temporary parenting time schedule on a "nesting" basis where parenting time of both parents was to occur in the home. Additionally, Rashida was to begin parenting coaching and therapy which may lead to co-parenting therapy.

¶ 11    On April 1, 2022, Rashida obtained an *ex parte* EOP (April 2022 EOP) against Christopher in a domestic violence court. Her petition for the EOP contained allegations that Christopher had damaged the home and her personal property, intimidated her and her mother and sister, and acted in a threatening manner.

¶ 12    Subsequently, on April 5, 2022, Christopher filed an emergency motion to modify the March 17, 2022, parenting allocation order. In this motion, Christopher stated on the three occasions when he had parenting time in the home, Rashida refused to leave at the appointed time and the police were called twice to escort her from the home.

¶ 13    The emergency motion alleged that Rashida sought but was denied a FOID card and she is appealing this decision. Christopher fears for his and the children's safety if Rashida obtains a firearm. He also contended that although Rashida had obtained a POP against Rahmad, she allowed him to reside in the home.

¶ 14    Christopher asserted that GAL Wilson had recommended counseling for Rashida and a new therapist for the children. The children's prior therapist ended counseling because Rashida was discussing the divorce and other inappropriate matters with the children. Rashida has refused to seek counseling and "blocked the children from obtaining a new therapist." He also maintained that GAL Wilson was recommending that "going forward [Rashida] should be allowed only supervised visitation with her children".

¶ 15    Christopher argued that Rashida's conduct "has created a high-tension environment for the parties' children, she has repeatedly for no cause involved the police in family affairs and has made it such that her children are fearful of her and depressed." He requested that the court modify the March allocation order to restrict Rashida to supervised visitation, give Christopher exclusive possession of the home and order an evaluation of Rashida under 750 ILCS 5/604.1(b) (West 2022) (604 evaluation).

¶ 16    As a result of the emergency motion, the court, on April 8, 2022, entered an order terminating the nesting requirement in the March allocation order. On a temporary basis Rashida was allowed to reside in the home and Christopher was to obtain alternate housing for his parenting time. The order provided that Rashida was to withdraw her pending application and appeal for a FOID card. The court ordered Rashida to continue with therapy and cooperate with family therapy.

¶ 17    On May 19, 2022, the court appointed Dr. Darlene Perry to conduct a 604 evaluation to determine whether either party should be awarded the sole right to make decisions about the

children or whether those decisions should be made jointly. In the same order, the court provided that Christopher and Rashida were to agree to the children's summer schedule for extracurricular activities and camps. The court also terminated "the daily phone call requirement" in the March allocation order.

¶ 18    Christopher on June 27, 2022, filed another emergency motion to modify the existing parenting allocation orders and charged Rashida with violations of those orders. Christopher explained that the allocation orders provide for the exchange of the children on Wednesdays and Saturdays with the Saturday exchanges being done at a McDonalds restaurant. Since Christopher found a home, there have been eight Saturday exchanges and Rashida twice called the police to be present. On May 28, 2022, Rashida failed to appear at the restaurant as scheduled and in response to Christopher's text, Rashida said she was busy and would exchange the children on the next day. Additionally, although the court terminated telephone contacts during parenting time, Rashida regularly texted the children during Christopher's parenting time. She enrolled two of the children in summer school over Christopher's objection, is not cooperating with the search for a new family therapist and continues to talk to the children about the divorce. She allows Rahmad to live at the marital home despite his recent arrest on gun charges. Christopher asked that Rashida's parenting time be suspended or limited.

¶ 19    In a report dated June 29, 2022, GAL Wilson stated that problems continued with parenting time exchanges. The report revealed that Rahmad had been arrested while driving an automobile with members of a gang and police found guns and shell casings. GAL Wilson believed that Christopher's motion should be treated as an emergency.

¶ 20    On July 20, 2022, the court entered an order allowing Rashida to text the children one time to say good night when they were with Christopher.

¶ 21 On August 15, 2022, the court entered an order providing that Saturday exchanges would be done at the Matteson Fire Department. Rahmad was not to be present in the home or near the children during Rashida's parenting time. Both parents were prohibited from having firearms around the children.

¶ 22 On November 10, 2022, Rashida filed a motion to modify the orders of April 8 and July 20, 2022. She asked that she be given phone calls up to 20 minutes for each of the children on each day they are with Christopher and to adjust the allocation orders to increase her parenting time. The matter was set for a pretrial conference on December 28, 2022.

¶ 23 During the pretrial conference, based on the court's recommendation, Rashida and Christopher agreed to a new parenting schedule which permitted voice or video calls with the children during the times the children were with the other parent under certain parameters.

¶ 24 In a supplemental report dated January 3, 2023, GAL Wilson detailed that during the pretrial conference the parties had not agreed as to when the new parenting schedule was to begin. Rashida determined that the schedule began immediately and as a result Christopher did not have any parenting time with the children over the Christmas holiday. The report included a recommendation that automatic penalties be put in place for visitation violations.

¶ 25 On January 6, 2023, the court entered a temporary allocation order granting Rashida parenting time with the children from Monday through Wednesday and granting Christopher parenting time from Wednesday through Friday. The parties were to alternate the weekend parenting time. Each party was granted up to 15 minutes of voice/video telephone contact with the children during the other parent's parenting time.

¶ 26 Christopher, on February 7, 2023, filed a motion to modify the allocation order of January 6, 2023, in which he claimed that Rashida was violating the order. She was involving the police in

the exchange of the children and had failed to comply with the new provisions as to phone and video calls with the children. Rashida filed an answer, explaining that because she is fearful of Christopher, she has contacted police in advance of the exchanges.

¶ 27    On February 14, 2023, Rashida filed motions to transfer the case to the Office of the Public Guardian and to remove GAL Wilson. On March 28, 2023, she filed a motion for a temporary restraining order against Christopher which would prohibit him from dissipation of marital assets and for an accounting.

¶ 28    On May 1, 2023, Christopher filed an emergency motion to temporarily suspend Rashida's parenting time. He alleged that Rashida had notified him that he did not have parenting time for the upcoming weekend which was contrary to the January 6 order. He also maintained that on April 20, Rashida called the police to do a wellness check. The police came to Christopher's house, interviewed the children, "found everything in order and took no action." Rashida also notified the Department of Children and Family Services (DCFS) that Christopher was abusing the children. On April 22, a DCFS case worker came to his house, interviewed the children, "found no problem and left without taking action."

¶ 29    On May 12, 2023, the court entered a new order stating that "until the June 23, 2023, trial date, Rashida shall have supervised parenting time, which shall be reviewable at trial." Rashida was prohibited from calling the police to conduct checks on the children's wellness during Christopher's parenting time.

¶ 30    On June 8, 2023, the court denied Rashida's amended motion to transfer the case to the Office of the Public Guardian and to remove GAL Wilson. In the same order, the court granted GAL Wilson's petition for attorney fees and cost and ordered Rashida to make payments.

¶ 31    On July 25, 2023, after a trial, the court entered a judgment for allocation of parental responsibilities (allocation judgment). The court found that it was in the best interest of the children that Rashida and Christopher co-parent the children and there was no further need to restrict or supervise Rashida's parenting time. GAL Wilson was discharged by order entered on July 27.

¶ 32    After a trial, Judge Ross entered a judgment for dissolution of marriage on December 12, 2023 (dissolution judgment).

¶ 33    On December 15, 2023, Rashida filed an emergency motion to modify the allocation judgment and requested that she be given primary custodial rights. She contended that San. T. "was taken to Montrose Hospital for a suicidal ideation hold out of fear of returning to [Christopher's] home for exchange day." She also alleged that Christopher had violated the allocation judgment in numerous ways.

¶ 34    The court entered an order, on December 18, 2023, appointing Vickie Pasley as GAL (GAL Pasley) stating that her appearance "is a limited scope appearance for investigation of the minor child [San. T.]'s mental health issues and parenting time."

¶ 35    On January 11, 2024, Rashida appealed from the dissolution judgment.

¶ 36    This court on September 26, 2024, affirmed the dissolution judgment as Rashida's brief and the record on appeal were insufficient for review of her claims on appeal. See *Thompson v. Thompson*, 2024 IL App (1st) 240079-U.

¶ 37    Rashida on October 3, 2024, filed a petition for EOP against Christopher in the divorce case on behalf of San. T. The petition alleged several incidents of Christopher's physical abuse against San. T. The court granted the petition and entered an EOP (October 2024 EOP) which gave Rashida the care of the children. The issue of Christopher's parenting time was reserved.

¶ 38    On October 4, 2024, Christopher filed an emergency motion to vacate the October 2024 EOP which he later amended. In the amended motion, Christopher specifically denied each of the assertions of abuse in Rashida's petition for the October 2024 EOP.

¶ 39    The court vacated the October 2024 EOP on October 15, 2024.

¶ 40    Rashida again filed a petition for EOP against Christopher on February 19, 2025. She alleged that on February 12, 13, 14 and 17, 2025, Christopher had turned off the children's phones and did not permit Rashida to talk to them. She further asserted that on February 17, Christopher did not bring the children to the drop off and as a result she filed a police report. This petition was denied on February 20.

¶ 41    On February 21, Rashida filed a petition for EOP against Christopher on behalf of San. T. In the petition, Rashida alleged that on February 20, San. T. was transported to the emergency room by ambulance. The petition further alleged that San. T. had been " 'thrown across the room' where she hit her body on a 'hard part of the couch.' " She was also " 'pushed into a door' and repeatedly pushed against a wall." San. T. "injured her finger when pushed due to falling on a pencil which lodged in her finger." San. T. did not wish to return to Christopher's care. According to the petition, the police took "protective custody" of San. T. and released her to Rashida and not Christopher "based upon the evidence and details of abuse reported [to] them." Rashida asked that she be granted physical care and possession of the children and that Christopher be denied parenting time.

¶ 42    Then on February 23, 2025, in the domestic violence division, Rashida filed another petition for EOP against Christopher alleging that on February 21, San. T. was taken to Lurie Children's Hospital emergency room "for a behavioral assessment and physical exam due to

continued pain from being violently and repeatedly pushed by [Christopher] on 2/20/25." Again, she asked that the children be placed in her care and that Christopher be denied parenting time.

¶ 43    An EOP was entered on that day (February 2025 EOP).

¶ 44    Christopher filed an emergency motion in this case on February 24, 2025, seeking to modify the allocation judgment and the May 12, 2023, order which restricted Rashida from calling the police to conduct wellness checks when the children were with Christopher (February 2025 motion to modify).

¶ 45    In this motion, Christopher stated that during a February 20, 2025, court proceeding, GAL Pasley informed the court that Rashida had called the police on January 15, February 14, February 15 and February 17, 2025, seeking checks on the wellness of the children during Christopher's parenting time. After each call, the police came to Christopher's home. Christopher asserted that the calls were made without basis. After that court date, Rashida made similar calls to the police on February 20 and 21.

¶ 46    The February 2025 motion to modify also alleged that Rashida failed to co-operate with court-ordered therapy and counseling. As a result, the counseling and therapy had ended.

¶ 47    Christopher maintained that Rashida's conduct posed a clear and immediate danger to the children. He requested that the court suspend or limit Rashida's parenting to supervised visitation, prohibit her from phone contact with the children during his parenting time and order her not to interfere with the children's counseling.

¶ 48    On February 26, the court entered an order (February 26 order) which first found that the February 2025 motion to modify sufficiently alleged an emergency. The order further noted that the May 12, 2023, order was in effect and precluded Christopher and Rashida from calling the police "in regard to parenting issues." The court ordered that the allocation of parenting time set

forth in the allocation judgment "shall remain the same. No modification." Further, the court ordered that "going forward", Christopher and Rashida were limited to a single, five-minute phone call at a designated time to the children during the other parent's parenting time; Rashida would be fined $1000 for each wellness check call she makes to the police during Christopher's parenting time except if Christopher is arrested as a result of the wellness check; and Christopher and Rashida were to cooperate with GAL Pasley as to counseling. All matters were continued to March 5, 2025.

¶ 49    On March 4, Rashida filed a motion for temporary modification of parenting time and responsibilities and repeated many of her allegations in her recent petitions for EOP.

¶ 50    On March 13, Rashida filed a petition for a rule to show cause against Christopher in which she alleged that Christopher violated the February 2025 EOP by coming to the children's doctor appointment on February 28 and acting in a belligerent manner.

¶ 51    On March 14, the February 2025 EOP was extended to March 28. The hearing on the EOP was continued to that date.

¶ 52    Rashida filed a notice of appeal on March 26 from the February 26 order.

¶ 53    We have an independent duty to consider our jurisdiction and dismiss an appeal if appellate jurisdiction does not exist. *In re Marriage of Salviola*, 2020 IL App (1st) 182185, ¶ 36. As the appellant, Rashida has the burden to demonstrate appellate jurisdiction. *Id*.

¶ 54    The Illinois Constitution grants this court jurisdiction to hear appeals from final judgments. Ill. Const. 1970, art. VI, sec. 6. Generally, we have jurisdiction to hear appeals from final orders disposing of every claim, meaning every right, liability, or matter that has been raised in an action. *American Advisors Group v. Williams*, 2022 IL App (1st) 210734, ¶ 10. Absent an applicable exception provided by the rules of the Illinois Supreme Court, we are without jurisdiction to review judgments or orders which are not final and have not disposed of all claims. *In re Parentage of*

*Rogan M.*, 2014 IL App (1st) 132765, ¶ 9. Supreme Court Rule 304(a) provides one such exception pursuant to which

> "[i]f multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. March 8, 2016).

¶ 55    Rule 306(a)(5) also provides an exception allowing a party to bring a permissive appeal from "interlocutory orders affecting the care and custody of or the allocation of parental responsibilities for unemancipated minors." Ill. S. Ct. R. 306(a)(5) (eff. Oct. 1, 2020).

¶ 56    The February 26 order, the only order on appeal, was entered during post-decree proceedings. In *In re Marriage of Crecos*, 2021 IL 126192, our supreme court addressed the "unusual circumstances" presented by post-dissolution proceedings where the final judgment of dissolution resolves all the issues which exist at that time "but that judgment may be subsequently modified at the request of the parties, sometimes repeatedly." *Id.* ¶ 19. The supreme court concluded that for purposes of appellate jurisdiction, unrelated post-dissolution matters constitute separate claims and a final order disposing of one of several claims may not be appealed without a finding under Rule 304(a). *Id.* ¶ 45.

¶ 57    In considering the applicability of Rule 304(a) as a basis of appellate jurisdiction here, first, we cannot determine from the record whether the February 26 order was a final order. A Rule 304(a) appeal may only be made from a final judgment. See Ill. S. Ct. R. 304(a) (eff. March 8, 2016). "An order is final and appealable if it terminates the litigation between the parties on the merits or disposes of the rights of the parties, either on the entire controversy or a separate part

thereof." *RW Dunteman Co v C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998). The record lacks a transcript of the proceedings which led to the entry of the February 26 order. The February 26 order relates to the February 2025 motion to amend but the order does not expressly state whether the motion was denied or granted. It is not clear whether the order fully resolves all the issues raised by the motion. As the appellant, Rashida has the duty to provide a record which is sufficient for this court to review the issues and any doubts arising from the incompleteness of the record are resolved against the appellant. *Foutch v O Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 58 Second, even if the February 26 order was a final order, several matters were still pending at the time Rashida filed the notice of appeal. Specifically, the EOP order was set for hearing. Also, Rashida's motion for temporary modification of parental responsibility and petition for rule to show cause against Christopher were unresolved. Given these pending matters, an appeal of the February 26 order under Rule 304(a) was only allowable if the trial court first made a written finding that there was no just reason to delay enforcement or appeal. The February 26 order does not include the necessary Rule 304(a) finding. Accordingly, we do not have jurisdiction of the February 26 order under Rule 304(a).

¶ 59 Next, we consider whether we have jurisdiction under Rule 306(a)(5), which permits a party to petition for leave to appeal from interlocutory orders "affecting the care and custody of or the allocation of parental responsibilities for unemancipated minors." Ill. S. Ct. R. 306(a)(5) (eff. Oct. 1, 2020). Arguably, the February 26 order's provisions about phone calls to the children and wellness checks during parenting time affect the care and custody of or the allocation of parental responsibilities as to the children. However, Rashida never sought permission to appeal by filing a petition for leave to appeal as required under Rule 306(a)(5). In certain limited circumstances, we may acquire jurisdiction by exercising our discretion to characterize the appellant's notice of

appeal as a petition for leave to appeal under Rule 306(a)(5). See *e.g.*, I*n re Marriage of Kostusik*, 361 Ill. App. 3d 103, 112 (2005). However, even if we construed Rashida's notice of appeal as a petition for leave to appeal, we would still lack jurisdiction as it was not filed within 14 days of the entry of the order appealed from as required by Rule 306(a)(5). Rashida filed her notice of appeal from the February 26 order on March 26, which was 28 days after the entry of that order. We do not have jurisdiction under Rule 306(a)(5).

¶ 60     For all the foregoing reasons, we dismiss Rashida's appeal for lack of jurisdiction.

¶ 61     Dismissed.